

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2001

# Powell v. Ridge

Precedential or Non-Precedential:

Docket 00-1711

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Powell v. Ridge" (2001). *2001 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 6, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1711

DAVID POWELL; SHELEAN PARKS; PA TRICE EVERAGE;
JULIA A. DAVIS; YVETTE BLAND; GERALDINE NEWTON;
MARIA M. RIVERA; MARY E. MILLER; GREGOR Y LUZAK;
CATHERHINE LUZAK; FU ZHEN XIE; BLACK CLERGY OF
PHILADELPHIA AND VICINITY; PHILADELPHIA BRANCH
NAACP; ASPIRA, INC. OF PENNSYLVANIA; P ARENTS
UNION FOR PUBLIC SCHOOLS; CITIZENS COMMITTEE
ON PUBLIC EDUCATION IN PHILADELPHIA; PARENTS
UNITED FOR BETTER SCHOOLS, INC.; DAVID W .
HORNBECK, SUPERINTENDENT, The School District of
Philadelphia; FLOYD W. ALSTON, PRESIDENT , Board of
Education of the School District of Philadelphia; BOARD
OF EDUCATION OF THE SCHOOL DISTRICT OF
PHILADELPHIA; THE SCHOOL DISTRICT OF
PHILADELPHIA; EDWARD G. RENDELL, MAYOR, City of
Philadelphia; CITY OF PHILADELPHIA

PHILADELPHIA FEDERATION OF TEACHERS LOCAL 3;
TED KIRSCH, PRESIDENT, GUARDIAN AD LITEM,
        Intervenors in D.C.

v.

THOMAS J. RIDGE, Governor of the Commonwealth of
Pennsylvania; JAMES P. GALLAGHER, DR., Chairperson
Commonwealth of Pennsylvania State Board of Education;
EUGENE W. HICKOK, DR., Secretary of Education;
BARBARA HAFER, Treasurer;

MATTHEW J. RYAN; ROBERT C. JUBELIRER; JESS M.
STAIRS; JAMES J. RHOADES,
        Intervenors in D.C.,
        Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA
D.C. Civil No. 98-CV-1223
District Judge: The Honorable Herbert J. Hutton

Argued: January 18, 2001

Before: ROTH, BARRY, Cir cuit Judges and SHADUR,*
District Judge

(Filed: April 6, 2001)

John P. Krill, Jr., Esquire (Ar gued)
Linda J. Shorey, Esquire
Julia M. Glencer, Esquire
Kirkpatrick & Lockhart
240 North Third Street
Harrisburg, Pennsylvania 17101

 Attorney for Appellants Matthew J.
Ryan, Robert C. Jubelirer, Jess M.
Stairs and James J. Rhoades

James J. Rodgers, Esquire
 (Argued)
Lynn R. Rauch, Esq.
Dilworth, Paxson, Kalish
 & Kauffman
1735 Market Street
3200 The Mellon Bank Center
Philadelphia, Pennsylvania 19103

Patricia A. Brannan, Esquire
Hogan & Hartson
555 13th Street, N.W.
Washington, D.C. 20004-1109

_____

* The Honorable Milton I. Shadur, United States District Judge for the
Northern District of Illinois, sitting by designation.

William T. Coleman, Jr., Esquir e
Stephen J. Harburg, Esquire
O'Melveny & Myers
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004

 Attorneys for Appellees Shelean
Parks, Yvette Bland, Gregory
Luzak, Catherine Luzak, Fu Zhen
Xie, Floyd W. Alston, President,
Board of Education of the School
District of Philadelphia, David W.
Hornbeck, Superintendent, The
School District of Pennsylvania,
Board of Education School District,
Philadelphia, and School District of
Philadelphia,

Michael Churchill, Esquire
Public Interest Law Center of
 Philadelphia
125 South 9th Street, Suite 700
Philadelphia, PA 19107

 Attorneys for Appellees David
Powell, Patrice Everage, Julia A.
Davis, Geraldine Newton, Maria M.
Rivera, Mary E. Miller, Black Clergy
of Philadelphia and Vicinity,
Philadelphia Branch NAACP,
Aspira, Inc. of Pennsylvania,
Parents Union for Public Schools,
Citizens Committee on Public
Education in Philadelphia, and
Parents United for Better Schools,
Inc.

Jane L. Istvan, Esquire
City of Philadelphia
Law Department
1515 Arch Street, One Parkway
Philadelphia, PA 19102

 Attorneys for Appellees Edward G.
Rendell, Mayor, City of
Philadelphia, and City of
Philadelphia

Ralph J. Teti, Esquire
Willig, Williams & Davidson
1845 Walnut Street
24th Floor
Philadelphia, PA 19103

 Attorneys for Appellees
Philadelphia Federation of Teachers
Local 3, and Ted Kirsch, President,
Guardian ad litem

Edward F. Mannino, Esquire
Akin, Gump, Strauss, Hauer
 & Feld
2005 Market Street
One Commerce Square, Suite 2200
Philadelphia, PA 19103

 Attorneys for Appellees Thomas
Ridge, Governor of the
Commonwealth of Pennsylvania,
James P. Gallagher, Dr.,
Chairperson Commonwealth of
Pennsylvania State Board of
Education, Eugene W. Hickok, Dr.,
Secretary of Education and
Barbara Hafer, Treasurer

4

OPINION OF THE COURT

BARRY, Circuit Judge:

Appellants suggest that we recognize a for m of legislative immunity heretofore unknown in the law, one which can best be described as "partial legislative immunity." Thus, and it is not disputed, the immunity appellants assert would enable them to seek discovery, but not r espond to it; take depositions, but not be deposed; and testify at trial, but not be cross examined. Moreover , appellants presumably believe that when they come upon an aspect of the litigation they find disagreeable, as they find the discovery order at issue here to be, they will be able to pursue an interlocutory appeal in this Court. W e disagree, and will dismiss this interlocutory appeal for lack of jurisdiction.

I.

In March 1998, suit was filed by students and parents, organizations, school district and city officials of the City of Philadelphia, and the City itself (hereinafter"appellees") alleging that the formula used by the Commonwealth of Pennsylvania to allocate certain federal education monies violated the regulations adopted by the U.S. Department of Education implementing Title VI of the Civil Rights Act, 42 U.S.C. SS 2000d–2000d–7. See 34 C.F .R. S 100.3(b). More specifically, the complaint alleged that the Commonwealth's criteria and methods of funding public education yield racially discriminatory results in Philadelphia and other predominantly minority school districts. Injunctive and declaratory relief was sought against members of the state's executive branch, including the Governor , the Secretary of Education, the State Treasurer , and the Chair of the State Board of Education.

In early May 1998, several leaders of the Pennsylvania General Assembly (the "Legislative Leaders") moved to intervene in the suit, citing their financial and legal interests in the litigation and the need to"articulate to the

Court the unique perspective of the legislative branch of the Pennsylvania government." App. at 48a. 1 That motion was unopposed, and was granted by the District Court. In their brief in support of intervention, the Legislative Leaders explicitly concurred in the motion to dismissfiled by the executive department defendants two days earlier; shortly thereafter, the legislators filed their own motion to dismiss or for judgment on the pleadings; and shortly after that, they filed yet another motion for judgment on the pleadings. The District Court dismissed the complaint for failure to state a claim. We reversed, emphasizing that the validity of appellees' claims could be tested only on a developed record and rejecting the Legislative Leaders' argument that plaintiffs lacked standing to maintain each count of their complaint. Powell v. Ridge, 189 F.3d 387 (3d Cir. 1999). Notably, we did not mention legislative immunity, be it partial or absolute, because it was, at least at that time, a non-issue. The Legislative Leaders and the executive branch defendants filed separate petitions for certiorari to the Supreme Court of the United States. Both petitions were denied. Ryan v. Powell, 528 U.S. 1046 (1999); Ridge v. Powell, 528 U.S. 1046 (1999).

The District Court, taking the cue from us, thereafter entered a scheduling order and appellees accordingly sought discovery from all defendants, both executive and legislative. The Legislative Leaders objected, asserting, for the first time, "legislative privilege." After a meeting between counsel for both sides, however, the Legislative Leaders agreed to search their files to deter mine what documents they possessed which would fall under the discovery requests. Ultimately they reported finding two boxes of documents, only 56 pages of which they deemed to be not privileged. Appellees then filed a Motion to Compel, which was granted, although because of a miscommunication between counsel, the Legislative Leaders' response to the motion was not received until after the District Court entered its order. That response, which included a multitude of objections to the discovery requests including

_____

1. Then then-proposed intervenors referred to immunity only in passing when they stated, in a footnote in their brief, that they do not waive any "speech or debate immunity" they may have. App. at 37a.

6

"legislative privilege," was, however, considered by the Court in connection with the Legislative Leaders' motion for reconsideration. The Court gave the objections short shrift, finding that our prior decision stressed the"importance of Plaintiffs' ability to conduct discovery" and, in light of this "mandate," denied the motion for reconsideration. The Legislative Leaders have now appealed the or der granting the Motion to Compel.2

II.

"As a general rule, discovery orders ar e not final orders of the district court for purposes of obtaining appellate jurisdiction under 28 U.S.C. S 1291." In re Ford Motor Co., 110 F.3d 954, 958 (3d Cir. 1997) (citing Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 461 (3d Cir . 1996)). The collateral order doctrine excepts from this prohibition a narrow range of interlocutory decisions. In re Montgomery County, 215 F.3d 367, 373 (3d Cir . 2000) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)). To come within the doctrine, an interlocutory decision must conclusively determine the disputed issue, the issue must be completely separate from the merits of the action, and the decision must be effectively unreviewable on appeal from a final judgment. Id. (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)).

Just recently, in Bacher v. Allstate Ins. Co., 211 F.3d 52 (3d Cir. 2000), we discussed the applicability of the collateral order doctrine to discovery or ders. In Bacher, the

_____

2. Appellees contend that the Legislative Leaders should have appealed the denial of their Motion for Reconsideration rather than the order granting the Motion to Compel. Without pausing to decide that issue, we note that "decisions on the merits are not to be avoided on grounds of technical violations of procedural rules," Polonski v. Trump Taj Mahal Associates, 137 F.3d 139, 144 (3d Cir . 1998), cert. denied, 525 U.S. 823 (1996). This Court will exercise appellate jurisdiction over orders not specified in the notice of appeal where "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Id. (citations and internal quotations omitted). Each of those conditions is met here.

7

defendant insurance carrier contended that "sensitive" information regarding previous settlements ought to be privileged from discovery. Id. at 55. W e found that in light of Cunningham v. Hamilton County, 527 U.S. 198 (1999), Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994), and the approach taken by other courts of appeals -- which, we noted, prohibit immediate r eview of discovery orders even when privilege issues are involved -- the collateral order doctrine does not reach appeals of discovery orders "beyond the narrow categories of trade secrets and traditionally recognized privileges, such as attorney-client and work product." Bacher, 211 F .3d at 57 (emphasis added).3 Underlying these narrow exceptions to the general rule of non appealability is a concern that wher e confidential information is sought, there is no way, absent immediate appeal of the order requiring disclosur e, to "unscramble the egg scrambled by the disclosure." For d, 110 F.3d at 963. It bears mention that even if legislative immunity in its traditionally recognized form wer e similarly bottomed on confidentiality, which it is not, the Legislative Leaders explicitly disavow any such interest.

It is beyond argument that absolute legislative immunity represents a traditionally recognized privilege, and orders denying legislative immunity have often been r eviewed under the collateral order doctrine. Absolute immunity, after all, creates not only protection fr om liability, but also a right not to stand trial. Montgomery County , 215 F.3d at 373 (citing Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)). "Thus, interlocutory review of the Appellants' absolute immunity claims is necessary to preserve the pr otections such immunity affords." Id. In light of such clear case law, the jurisdictional hurdle discussed in Bacher would not

_____

3. We even more recently examined an interlocutory appeal of a discovery order in Pearson v. Miller, 211 F .3d 57 (2000). Writing only a few days after the Bacher decision, we found jurisdiction under the collateral order doctrine. Id. at 64-65. Pearson is clearly distinguishable from what is at issue here. The information sought in Pearson was confidential and the privilege asserted was based upon specific confidentiality provisions of three state statutes. Id. at 62-63. The Legislative Leaders, by contrast,
do not assert a privilege under state law nor any interest in confidentiality.

8

stand in the way of a legislator asserting facts giving rise to a colorable claim of legislative immunity.

This is not such a case. Although Bacher found that the collateral order doctrine "should apply to broad categories of interlocutory orders, without concer n for the individual circumstances of particular cases," Bacher, 211 F.3d at 56 (citing Digital Equipment, 511 U.S. at 868), the Legislative Leaders stray far beyond the bounds of traditional legislative immunity, territory they surely r ecognize. Legislative immunity, they explain, is a doctrine which "protects state legislators absolutely fr om liability for their legislative activities. It also provides legislators with protection from the burden of defending themselves when engaged in the sphere of legitimate legislative activity." Appellants' Br. at 14-15 (citations and inter nal quotations omitted). Furthermore, they add, legislative immunity "protects against disruption to the legislative process, which civil discovery invariably precipitates." Id. at 44, n.14. All of this, of course, is correct.

Despite their understanding of legislative immunity's broad parameters, however, the Legislative Leaders are not seeking immunity from this suit which, it must be remembered, they voluntarily joined. Nor are the Legislative Leaders seeking any kind of wholesale protection from the burden of defending themselves. Instead, the Legislative Leaders build from scratch a privilege which would allow them to continue to actively participate in this litigation by submitting briefs, motions, and discovery requests of their own, yet allow them to refuse to comply with and, most likely, appeal from every adverse order . As we noted at the outset, and as the Legislative Leaders conceded at oral argument, the privilege they propose would enable them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cr oss-examined. In short, they assert a privilege that does not exist.

Not surprisingly, the Legislative Leaders have failed to come up with even one case which hints at the existence of the privilege they press. Moreover , every case which they do cite to support this privilege features, in dir ect contrast to this case, a defendant or a target of a subpoena seeking to

9

extricate himself or herself completely fr om various legal entanglements. See, e.g., Burtnick v. McLean, 76 F.3d 611 (4th Cir. 1996); Brown & W illiamson Tobacco Corp. v. Williams, 62 F.3d 408 (D.C. Cir . 1995); MINPECO, S.A. v. Conticommodity Services, Inc., 844 F.2d 856 (D.C. Cir. 1988); Miller v. Transamerican Press, Inc., 709 F.2d 524 (9th Cir. 1983); 2BD Assoc. Limited v. County Commissioners for Queen Anne's Co., 896 F . Supp. 528 (D. Md. 1995); Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D. Md. 1992); Campaign for Fiscal Equity v. New York, 179 Misc. 2d 907 (N.Y. Sup. Ct. 1999).

Unlike the reluctant participants in the cases upon which they rely, the Legislative Leaders voluntarily installed themselves as defendants. And, unlike the reluctant participants in those cases, the Leaders wish to r emain as defendants and participate as long as this case is around; at no time, we note, have they invoked legislative immunity as a basis for any of their various motions to dismiss. This is simply not a case of legislators caught up in litigation in which they do not wish to be involved. Rather , these are self-made defendants who seek to turn what has heretofore been the shield of legislative immunity into a swor d.

A proper invocation of legislative immunity would typically call for the dismissal of a legislator fr om the lawsuit. Cases cited by the parties abound with examples of this complete remedy rather than the piecemeal remedies sought here. See, e.g., Supr eme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 733-34 (1980) (stating that if legislative immunity applied, "defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity") (emphasis added); Eastland v. United States Servicemen's Fund, 421 U.S. 491, 511 n.17 (1975) (while immunity does not absolve legislators of the responsibility of filing a motion to dismiss, such motions must be swiftly r esolved); Powell v. McCormack, 395 U.S. 486, 505-06 (1969) (citing prior cases in which the Court dismissed actions against members of Congress under the protection of the Speech and Debate Clause); Mitchell, 472 U.S. at 525 ("the essence of absolute immunity is its possessor's entitlement not to

10

have to answer for his conduct in a civil damages action."); Larsen v. Senate of the Commonwealth, 152 F .3d 240, 254 (3d Cir. 1998) (legislators' motion to dismiss granted for acts taken in legislative capacity).

Not only is dismissal of the legislator the logical and eminently appropriate result where legislative immunity applies, it also is the remedy which best furthers the underlying goals of the doctrine. As we have observed, "[l]egislative immunity must be applied pragmatically, and not by labels. Thus, without attempting to draw a line for all cases, we examine whether [the] request for prospective relief 8 [can] be accorded consistent with the policies underlying legislative immunity." Larsen, 152 F.3d at 253. We, too, need not attempt to set out the pr ecise parameters of legislative immunity for cases yet to come. W e find it manifestly clear, however, that absolute legislative immunity was at the heart of cases such as Larsen. The privilege described by the Legislative Leaders would not pr otect them absolutely from the burdens of this litigation and, therefore, is outside the bounds of traditional legislative immunity. "Legislators are immune from deterr ents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." T enney v. Brandhove, 341 U.S. 367, 377 (1951). See also United States v. Brewster, 408 U.S. 501, 517 (1972) (shield of legislative immunity "does not extend beyond what is necessary to preserve the integrity of the legislative pr ocess"); United States v. Nixon, 418 U.S. 683, 710 (1974) (cautioning that privileges "are not lightly created nor expansively construed").

The opinion concurring in the judgment only because, in its view, Larsen establishes our jurisdiction, would open the doors of our Court, albeit briefly, where the"privilege" invoked has, in the words of the distinguished author of that opinion, "no basis in law" and has "never been recognized by this, or any other, court . . . ." Conc. Op. at 13. Those doors must open, in her view, because we cannot in the course of our jurisdictional analysis even peek to see whether we are presented with a traditionally recognized privilege as that would involve touching on the merits. But if this view were to prevail, Bacher  would be rendered

11

4. The corollary to our finding of no jurisdiction under Bacher is that the
Legislative Leaders have not, at least as of yet, invoked absolute legislative immunity. Neither the District Court nor this Court, therefore,
has been presented with the question -- and, given our lack of jurisdiction, we do not decide -- whether such immunity would be available to voluntary intervenors such as the Legislative Leaders, or whether the very act of intervening has waived the privilege. meaningless; indeed, a confined examination of at least certain underlying facts was necessary in Bacher  and would inevitably be necessary in applying Bacher. In any event, it appears that, under the concurring opinion itself, a peek at the merits would be in order, for it concludes that our collateral order jurisdiction is trigger ed by calling the privilege " `legislative' . . . in a case involving legislators acting in a legislative capacity," Conc. Op. at 14, a paradigm merits determination.

Because the purported privilege the Legislative Leaders invoke is assuredly not only not "traditionally recognized," but is not even suggested by any reasonable r eading of the applicable case law, Bacher requir es that we dismiss this interlocutory appeal for lack of jurisdiction.4 We note that, as in any civil case, the Legislative Leaders r emain protected by the District Court's power to limit discovery which is unreasonably cumulative, more easily obtainable from another source, or unduly bur densome. Fed. R. Civ. Proc. 26(b)(2).

12

ROTH, Circuit Judge, Concurring:

I agree with the Majority that the asserted legislative immunity from discovery has no basis in law and must be denied. The immunity asserted is unprecedented in its scope and breadth. The four Legislative Leaders, who knowingly and voluntarily intervened as defendants in this litigation and wish to remain as such, ar gue that they should enjoy all the rights associated with being parties to federal litigation while bearing none of the bur dens or responsibilities. I have found nothing to support the idea that a state legislator who remains a party to civil litigation is immune from compliance with discovery. Indeed, not only has such a privilege never been recognized by this, or any other, court, but it might conceivably violate an opposing party's due process rights wer e we to recognize it.

In my view, however, the lack of merit in the Legislative Leaders' claim of immunity does not mean, as the Majority holds, that we do not have jurisdiction to hear the appeal under the Collateral Order Doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), and its progeny. Rather, the lack of merit means that the claim of immunity should be denied for just that reason -- it lacks merit. It is established law in this Circuit that the denial of a claim of legislative immunity is immediately reviewable under Cohen. See Larsen v. Senate of the Commonwealth of Pennsylvania, 152 F.3d 240, 245 (3d Cir . 1998). In my view, Larsen establishes our jurisdiction here to review the merits of the claimed immunity.

It is true that the Legislative Leaders raise their claimed privilege in a different context -- as immunity from discovery while remaining parties to the civil action, not as immunity from liability or from having to be parties to the action at all. See, e.g., Supr eme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 732-33 (1980). But that does not, as the Majority holds, change the fact that the Legislative Leaders assert a privilege that is a by-product of their status as legislators, just as their recognized immunity from liability and from having to defend themselves is a by-product of their status as legislators. See id. Clearly, the immunity that the Legislative Leaders claim is "legislative." The merits of their

13

claimed privilege must be irrelevant to our jurisdictional analysis.

In my view, the Majority errs by conflating a merits analysis into its jurisdictional conclusion. The Majority recognizes that the Legislative Leaders claim that their immunity falls within the "legislative immunity" rubric, that the Legislative Leaders claim "a form of legislative immunity . . . ." Majority at 5. When the Majority subsequently states that the claimed immunity is "heretofor e unknown in the law," Majority at 5, and that the Legislative Leaders "assert a privilege that does not exist", id. at 9, that sounds to me like a decision on the merits. The Majority's conclusion that we lack jurisdiction appears to rest on the following reasoning: A claim of legislative immunity in a new context, which lacks merit, ceases to be a traditionally r ecognized privilege and is not reviewable under our decision in Bacher v. Allstate Ins. Co., 211 F.3d 52, 57 (3d Cir. 2000) (holding that the collateral order doctrine should not be extended beyond the narrow categories of trade secr ets and traditionally recognized privileges). But this begs a question: If the asserted privilege is not "legislative" privilege because it is not a "colorable claim" or is not raised in the appropriate context, what is it?

I believe that simply labeling the defense as "legislative" privilege, in a case involving legislators acting in a legislative capacity, is sufficient to trigger our collateral order jurisdiction, opening the door to immediate appellate review of the denial of such a claim, r egardless of the fact that the "legislative" immunity arises in a new or different context or may lack merit. To my mind, our jurisdiction in the instant case is compelled by our decision in Larsen, where we expressly held that we had collateral order jurisdiction over the denial of claims of legislative immunity. See Larsen, 152 F.3d at 245.

Moreover, the District Court's or der compelling the Legislative Leaders to comply with discovery fits within the three-prong analytical framework that we have established for determining whether an order is r eviewable under Cohen: 1) it conclusively resolves the question of whether the Legislative Leaders must comply with discovery; 2) it resolves an important issue, immunity fr om discovery of

14

legislators who are parties to a case, that is separate from the merits of the case; and 3) it effectively is unreviewable on appeal from a final judgment because the Legislative Leaders would be required to comply with discovery before they can later assert their immunity. See In r e Ford Motor Co., 110 F.3d 954, 958 (3d Cir. 1997). Particular emphasis should be placed on the last prong, granting jurisdiction over those orders that would be effectively unreviewable on appeal from a final judgment, see Cunningham v. Hamilton County, 527 U.S. 198, 204 (1999); Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994); Ford Motor Corp., 110 F.3d at 958, meaning that the legal and practical value of the asserted privilege would be destr oyed if not vindicated prior to trial. See Lauro Lines SRL v. Chasser, 490 U.S. 495, 498–99 (1989).

The Majority relies on our decision in Bacher, supra. But that decision is not as limiting as the Majority suggests. Bacher does not stand for the proposition that a traditionally recognized privilege over which we would have collateral order jurisdiction, such as legislative immunity, ceases to be a traditionally recognized privilege merely because it is raised in a new context and ther efore ceases to be a colorable or meritorious claim of that privilege. Bacher did not involve a claim of a particular , identifiable privilege but was a case in which a party to a civil action attempted to appeal a run–of–the–mill discovery or der. The defendant there merely sought to avoid complying with simple discovery requests on the ground that the information sought (the amounts of past settlements paid) was confidential and not relevant and its disclosure would violate public policy, see Bacher, 211 F .3d at 53, but not because any privilege or immunity was implicated. Our conclusion that we lacked jurisdiction was not a new limitation on the collateral order doctrine but rather a consistent application of the long–standing rule that simple discovery orders are not final or ders subject to immediate review. See Bacher, 211 F.3d at 53 (quoting Ford Motor Co., 110 F.3d at 958). Here, by contrast, the Legislative Leaders assert a defined, specific, well–established, traditionally recognized privilege or immunity, albeit with a twist. But that twist, regardless of its effect on the merits of the privilege claim, does not affect our jurisdiction and does not

15

turn this case into Bacher -- the claimed privilege remains legislative, it remains traditionally r ecognized, and it therefore should remain immediately r eviewable.

Nor, as the Majority suggests, see Majority at 12, does Bacher require us to conduct a confined examination of the merits of the claimed privilege, only of the nature of the privilege, that is, of the type of immunity asserted. I suggest no differently. As I see it, we must look at the record, determine the nature or type of immunity asserted, and evaluate whether it is a traditionally recognized privilege, such as legislative immunity; this is precisely what Bacher commands. But looking at whether the immunity asserted is legislative, meaning asserted by legislators based on their official activity, and thus traditionally r ecognized, is not a merits determination. I have not taken "a peek at the merits," Majority at 12, just at the natur e of the privilege asserted. Only after concluding that the asserted privilege is legislative and that we therefore have collateral order jurisdiction, do I even broach the necessarily separate and distinct question of whether that claim of legislative immunity has merit in its current context.

I am concerned with the impact that this ruling may have on future cases. It is not contested that plaintiffs could challenge the legality of legislative decisions by suing the executive officers charged with carrying out those decisions.* Further, it is clear that plaintiffs could sue municipalities for legislative actions and the municipalities themselves are not entitled to legislative immunity. See Carver v. Foerster, 102 F.3d 96, 104 (3d Cir. 1996). It also is clear that the individual legislators could not be named as defendants in such a case, or could be dismissed at an early stage if the suit were based upon their legislative

_____

* It is worth noting that not all the Legislative Leaders' activities in funding education could be deemed legislative; some activities could be deemed executive and legislative immunity would not attach to such activities. See Carver v. Foerster, 102 F .3d 96, 101 (3d Cir. 1996) (an officer's executive or administrative actions ar e separate from legislative
actions). For example, the record r eflects that two of the Legislative Leaders are ex officio members of the Pennsylvania Board of Education, an executive department; any actions in that r ole properly should be deemed executive.

16

activities. See Bogan v. Scott–Harris, 523 U.S. 44, 52–54 (1998); Supreme Court, 446 U.S. at 733–34. But we have not addressed whether a non-party legislator would be legislatively immune from being made to comply with subpoenas for discovery in a civil action.

The Fourth Circuit has decided this issue, holding that non-party legislators cannot be made to testify or provide evidence as to their legislative activities or their motives. See Burtnick v. McLean, 76 F.3d 611, 613 (4th Cir. 1996); Berkley v. Common Council of the City of Charleston , 63 F.3d 295, 303 n.9 (4th Cir. 1995) (en banc) (suggesting, but not holding, that prior law indicates that members of the council would be privileged from testifying). W e have, on the other hand, noted that the intent–based inquiry that is part of certain doctrines in constitutional law necessarily means that judicial inquiry into legislative motive is not per se forbidden in such cases. See Carver, 102 F .3d at 104; see also Village of Arlington Heights v. Metr opolitan Hous. Dev. Corp., 429 U.S. 252, 268 n.18 (1977) (stating that in some extraordinary circumstances, the members of a legislative body might be called to testify about legislative actions, although this is usually to be avoided). We also have held that a state legislator may be subpoenaed to pr ovide evidence to a grand jury of which the legislator is not the target. See In re Grand Jury (Granite Purchases), 821 F.2d 946, 958 (3d Cir. 1987).

The immunity of a non–party legislator from civil discovery thus is an open issue in this Circuit, one that we may be called upon to resolve at some point. But suppose that case were to arise and the District Court were to reject the claimed privilege and order the non–party legislator to comply with the subpoena and provide testimony and discovery. Would we have jurisdiction immediately to review that order? As I read today's decision, the answer is no. I see no way to distinguish the future case fr om the instant case. A privilege from discovery by a non–party legislator would be as new in this Circuit as the privilege that the Legislative Leaders seek to assert in the instant case; it would not be a traditionally recognized privilege, foreclosing our immediate review under the Majority's r eading of Bacher. We could not distinguish this future case from the

17

instant one by saying that those legislators are asserting a legislative privilege (that is, a privilege that they possess by virtue of and in connection with their positions and activities as legislators) and that legislative immunity is a traditionally recognized privilege, because the Legislative Leaders here assert a privilege that unquestionably is "legislative" under such a definition. The only possible distinction between the instant case and the future case is that the latter might have more merit than the former, that it might be a colorable application of legislative immunity. But such consideration of the merits of a privilege must be irrelevant to the question of our jurisdiction.

If legislative privilege from civil discovery exists, either for a party, as in the instant case, or for a non-party as it may arise in the future, it exists to protect legislators from the burden of having to respond to discovery and of having to deal with the distractions and disruptions that discovery imposes on their ability to carry out their governmental functions. See Supreme Court, 446 U.S. at 733; Larsen, 152 F.3d at 245; see also Mitchell v. Forsyth, 472 U.S. 511, 529-30 (1985) (same with respect to qualified executive immunity). But a privilege from discovery (assuming, arguendo, it exists in either situation) is worthless if it cannot be vindicated prior to the legislators being forced to comply with discovery. Yet the Majority's approach effectively renders any possible claim of a legislative discovery privilege unreviewable until after discovery has been obtained. I cannot agree with such a limitation on our appellate jurisdiction.

Because I find that we do have jurisdiction over the Legislative Leaders' appeal, my next step would be to reach the merits of the claimed privilege. I would reject the privilege on its merits. In this regard, much of my reasoning is similar to that of the Majority. Indeed, that suggests to me that the Majority is, in fact, conducting a merits analysis of the immunity claim and, in effect, rejecting the Legislative Leaders' claim on that basis.

The Legislative Leaders knowingly, willingly, and voluntarily entered this case by intervening as defendants. They explicitly wish to remain as defendants. And they repeatedly insist that they should be treated the same as all

18

other defendants, as if they had been named in the original filing, entitled to all the privileges and rights of parties to civil litigation. It follows, I believe, that they waived any immunity from discovery by the decision to enter and remain in the case and to assert their rights as defendants.

The Legislative Leaders have pointed to no case in which a legislator who is a party to a civil action has been held to be immune from discovery. Every case the Legislative Leaders cite in their briefs and at oral argument involves attempts to take discovery in a civil case fr om legislators who are not parties to the case. See Burtnick, 76 F.3d at 613; Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 421 (D.C. Cir. 1995). As discussed supra, we have not determined whether such immunity exists in this Circuit and I offer no opinion as to whether such privilege should exist. But none of these cases supports the proposition that a legislator who chooses to become a party to a civil action is immune from discovery.

The party/non-party distinction is critical. Legislative immunity is intended to protect legislators fr om having to divert their time, energy, and attention fr om their legislative tasks in order to defend themselves or to pr ovide evidence in a civil action. It protects legislators fr om the potential harassment, disruption, and distraction that would come with the burden of having to defend themselves and/or provide evidence. See Supreme Court , 446 U.S. at 733; Grand Jury, 821 F.2d at 958. But the pr ophylactic function of the immunity is undermined once the Legislative Leaders choose to join the case. They have willingly subjected themselves to any disruptions and distractions that go with being party to civil litigation. They cannot now claim that they should be protected from the disruptions and distractions that they voluntarily undertook.

The Legislative Leaders attempt to downplay the significance of their intervention. Although they certainly recognize that legislative immunity may be waived, see Government of the Virgin Islands v. Lee, 775 F.2d 514, 520 n.7 (3d Cir. 1985) (noting that criminal defendant legislator's claim that he was impermissibly deposed was "unpersuasive" where the deposition was voluntary and the defendant waived any privilege); Burtnick, 76 F.3d at 613

19

(holding that non-party's privilege from being compelled to testify could be waived), the Legislative Leaders suggested at oral argument that intervening did not waive their privilege because any such waiver was not sufficiently explicit. I cannot conceive, however, of a more explicit waiver of immunity than willingly submitting oneself to the jurisdiction of a federal district court. If the Legislative Leaders had been named as defendants in the first instance and had failed to assert their legislative immunity as an affirmative defense, they unquestionably could be deemed to have waived that immunity. Intervening places them in the identical position.

I find helpful the analysis of the District Court in an analogous situation, in May v. Cooperman , 578 F. Supp. 1308 (D. N.J. 1984), aff'd in part, appeal dismissed in relevant part, 780 F.2d 240 (3d Cir. 1985). In May, four members of the New Jersey legislature, r presenting that body, intervened as defendants in a S 1983 action to defend the constitutionality of a state statute because the executive refused to defend it. After the law was struck down, the District Court assessed attorneys' fees against the legislative defendants, under 42 U.S.C. S 1988; the legislators argued that they were absolutely immune from an award of attorneys' fees for their legislative activity. The District Court rejected this argument, holding that the legislators had interjected themselves into the lawsuit by intervening and becoming parties, thereby waiving their legislative immunity from incidents of suit, such as attorneys' fees. See May, 578 F . Supp. at 1316–17. The District Court distinguished prior immunity cases, such as Supreme Court, because the New Jersey legislators had chosen to intervene and assume defense of the statute. See id. at 1317.

Similarly, compliance with discovery, and being compelled to comply with requests for documents, information, and testimony, are incidents of suit. Regardless of whether the Legislative Leaders would have been immune from such incidents as non-parties, it is clear that they surrendered any immunity fr om discovery by voluntarily and willingly entering and remaining in the action as party defendants.

20

I close by emphasizing that my analysis and the Majority's analysis are very similar in denying the asserted legislative immunity from discovery. The dif ference is that the Majority concludes that the lack of merit takes the immunity outside the bounds of legislative immunity and divests us of collateral order doctrine jurisdiction. I conclude that, because the asserted immunity is "legislative," we have collateral order jurisdiction. The lack of merit to the claim of immunity means the claim should be denied on its merits. I would affirm the judgment of the District Court because the Legislative Leaders have waived any immunity from discovery. They are as subject to production of documents and of testimony as is any other party.

For the above reasons, I concur only in the judgment of the Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

21