**Lou Ann MERKLE, Plaintiff,**

v.

**UPPER DUBLIN SCHOOL DISTRICT, Upper Dublin Township Police Department, Margaret Thomas, Dr. Clair Brown, Jr. and Detective Jack Hahn, Defendants.**

No. Civ.A. 98–3703.

United States District Court,
E.D. Pennsylvania.

April 9, 2001.

---

A. Martin Herring, A. Martin Herring & Assoc., Stephen J. Springer, Bochetto & Lentz, P.C., Deanna Kaplan Tanner, Herring and Herring, G. Alexander Bochetto, Bochetto and Lentz, P.C., Philadelphia, PA, for plaintiff.

Jeffrey H. Quinn, Duffy and Quinn, Philadelphia, PA, for defendants.

Joseph J. Santarone, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Upper Dublin Township Police Department.

### *MEMORANDUM*

ROBERT F. KELLY, District Judge.

Presently before this court are the Motions to Amend the Discovery Order and for Trial Court Certification that the Discovery Order of January 8, 2001 Is Reviewable Under 28 U.S.C. Section 1291 and the Cohen Doctrine, and for Permission to Appeal Pursuant to 28 U.S.C. Section 1292 and F.R.A.P. 5, filed by Defendants, the Upper Dublin School District, Dr. Clair Brown, Jr. ("Dr.Brown") and Margaret Thomas ("Ms.Thomas") (collectively, "the School Defendants"). These Motions arise out of the July 17, 1998 suit filed in this Court by Lou Ann Merkle ("Plaintiff") against the Defendants, alleging that the Defendants retaliated against her for engaging in protected activity.

For the reasons that follow, the Motion to Amend the Discovery Order and for Certification that the Discovery Order Is Reviewable is granted, and the Motion for Permission to Appeal is denied as moot.

### I. BACKGROUND

The facts of this case have been fully set forth in *Merkle v. Upper Dublin School District*, 211 F.3d 782, 786–788 (3rd Cir. 2000). Therefore, only a brief summary and subsequent history will be stated here. Plaintiff was dismissed from her teaching position at an Upper Dublin school after she was arrested for the theft of art supplies. Plaintiff contends that she was falsely arrested and dismissed in retalia-

tion for her constitutionally protected views on raising multicultural awareness.

On July 17, 1998, Plaintiff filed a Complaint in this Court raising numerous federal law claims and state law claims against the Upper Dublin Police Department and Detective Jack Hahn ("the Police Defendants") and against the School Defendants. On March 31, 1999, the Police Defendants moved for summary judgment, and on April 4, 1999, the School Defendants moved for summary judgment. On July 29, 1999, this Court granted both summary judgment motions as to Plaintiff's federal law claims and dismissed Plaintiff's state law claims without prejudice for lack of jurisdiction.

Plaintiff then appealed to the United States Court of Appeals for the Third Circuit, where the Third Circuit affirmed summary judgment against the Police Defendants and against the principal of the school, Ms. Thomas. However, the Third Circuit reversed and remanded the summary judgment decisions against the Upper Dublin School District and its superintendent, Dr. Brown, regarding Plaintiff's First and Fourteenth Amendment claims arising from the prosecution and dismissal of Plaintiff, allegedly in retaliation for Plaintiff's views.

On January 8, 2001, this Court entered an Order finding that the School Defendants had waived their attorney-client privilege and work product privilege regarding certain matters and allowing discovery of certain information. This Order was entered because this Court found that the School Defendants had asserted the affirmative defense of reliance on the advice of counsel and because Dr. Brown had testified about the content of attorney-client communications at the arbitration hearing and at his deposition. The School Defendants' present Motion for Permission to Appeal the January 8, 2001 Order, Pursuant to 28 U.S.C. Section 1292 and F.R.A.P. 5 was filed on January 16, 2001. The School Defendants' present Motion to Amend the January 8, 2001 Order and for Certification that the Order Is Reviewable Under 28 U.S.C. Section 1291 and the Cohen Doctrine was filed on January 31, 2001.

## II. STANDARD

■ Generally, discovery orders may not be appealed until after a final judgment has been entered because they are not final orders for the purpose of obtaining appellate jurisdiction under 28 U.S.C. section 1291. *In re Ford Motor Co.*, 110 F.3d 954, 958 (3rd Cir.1997). However,

the collateral order doctrine, first enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), provides a narrow exception to the general rule permitting appellate review only of final orders. An appeal of a nonfinal order will lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment.

*Id.* (internal citations omitted).

## III. DISCUSSION

■ The School Defendants have filed two Motions, either of which, if granted, would allow them to appeal this Court's January 8, 2001 Order finding that they waived their attorney-client privilege and work product privilege regarding certain matters concerning this case and allowing discovery of certain information. Because this Court will grant the School Defendant's Motion based upon 28 U.S.C. section 1291 and the Cohen, or collateral or-

der, doctrine, the Court will not discuss the School Defendant's Motion based upon 28 U.S.C. section 1292 and F.R.A.P. 5 and will deny it as moot.

While discussing the collateral order doctrine, the court in *Montgomery County v. MicroVote Corp.*, 175 F.3d 296 (3rd Cir. 1999) stated that "[t]his court has held that a discovery order requiring disclosure of material putatively protected by the attorney-client and work-product privileges is appealable under the collateral order doctrine." *Id.* at 300. The court further stated that *"In re Ford Motor Co.* established a bright-line rule permitting appeals from discovery orders requiring the disclosure of content putatively privileged by the attorney-client and work-product privileges." *Id.; see also, Powell v. Ridge,* 247 F.3d 520, 524 (3rd Cir.2001) (finding that "the collateral order doctrine does not reach appeals of discovery orders 'beyond the narrow categories of trade secrets and traditionally recognized privileges, such as attorney-client and work product.'") (quoting *Bacher v. Allstate Ins. Co.,* 211 F.3d 52, 57 (3rd Cir.2000)); *Pearson v. Miller,* 211 F.3d 57, 64 (3rd Cir.2000) (recognizing that the Third Circuit "held that an appeal from a denial of the application of the attorney-client privilege was reviewable under the collateral order doctrine"); *In re Chambers Dev. Co., Inc.,* 148 F.3d 214, 227 (3rd Cir.1998) (recognizing that the Third Circuit has "adopted the view that [it] has appellate jurisdiction over attorney-client privilege and work product doctrine protection issues under the collateral order doctrine").

In *In re Ford Motor Co.,* the court faced a similar situation to the one presented here. There, the plaintiff in a vehicle products liability action claimed that the Bronco II, a sport utility vehicle, was defectively designed, making it susceptible to rollover. *In re Ford Motor Co.,* 110 F.3d at 957. The Plaintiff sought the production of documents related to the development, marketing and safety of the vehicle that Ford claimed were privileged. *Id.* The district court ordered production of some of the documents and Ford appealed the order to the Third Circuit. *Id.* The Third Circuit determined that the order was appealable under the collateral order doctrine. *Id.*

In analyzing the first prong of the collateral order doctrine, whether the order conclusively determined the disputed question, the *Ford* court simply stated that the district court's order "requiring the production of the disputed documents leaves no room for further consideration by the district court of the claim that the documents are protected." *Id.* at 958. Likewise, under the *Ford* analysis, this Court concludes that, the January 8, 2001 Order requiring the production of information also does not leave room for further consideration by this Court, and thus the first factor of the collateral order doctrine is satisfied. *Id.*

The *Ford* court discussed the second prong of the collateral order doctrine, whether the order resolves an important issue that is completely separate from the merits of the dispute, in two stages. *Id.* First, the *Ford* court addressed whether the privilege issues were separate from the merits. *Id.* The court explained that the merits of the case concerned "what Ford knew about the alleged rollover propensity of the Bronco II, when it knew about [the] alleged propensity, and what it did about the alleged propensity." *Id.* The court determined that while the content of the documents sought would shed some light on those questions, the resolution of the privilege issues had nothing to do with those questions. *Id.* The court stated that its determination of the privilege issues were separate from the merits of the case

because it would not be necessary for the court to resolve the questions regarding Ford's knowledge and actions concerning the alleged rollover propensity. *Id.*

In the present case, the merits of the case include whether the School Defendants relied on their attorney's advice in making the decisions to prosecute and subsequently dismiss Plaintiff. While the information sought might illuminate these questions, the privilege issues themselves are separate from the merits of the action. As in *In re Ford Motor Co.,* during the appeal of the privilege issues, the court will not be required to resolve the questions dealing with what the School Defendants knew and what advice they did or did not accept from their attorney. The court will simply be required to decide whether the privileges were waived by the conduct of the School Defendants. *Id.* Therefore, the privilege issues in this case are separate from the merits of the case.

During the analysis of the second part of the second prong of the collateral order doctrine, the *Ford* court addressed whether the privilege issues were important. *Id.* at 959. The court stated that the attorney-client privilege and the work product privilege were important under the collateral order doctrine, "because the interests protected by the privilege[s] are significant relative to the interests advanced by adherence to the final judgement rule." *Id.* at 961. The court reasoned that the privileges advance the broad public interest in the administration of justice by encouraging full disclosure between the client and attorney and by protecting confidentiality, which are necessary for proper advocacy. *Id.* at 961–962. The court found that these important public interests outweigh the risks prevented by the final judgment rule. *Id.* Because this Court recognizes that the *Ford* court held that the work product privilege and the attor-

ney-client privilege are important under collateral order doctrine, this Court, based on the *Ford* court's reasoning, finds the same. Furthermore, because the privilege issues are separate from the merits and are important issues, the second prong of the collateral order doctrine is satisfied. *Id.*

In analyzing the third prong of the collateral order doctrine, whether the order is effectively unreviewable on appeal from a final judgment, the *Ford* court found that "an appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials." *Id.* at 963. The court noted that the United States Supreme Court has held that "review after final judgment is ineffective if the right sought to be protected would be, for all practical purposes, destroyed if it were not vindicated prior to final judgment." *Id.* at 962 (citing *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 497–99, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989)). Therefore, the court found that once the allegedly protected information is disclosed, the right sought to be protected is destroyed and thus, the order that demanded production is effectively unreviewable on appeal from a final judgment. *Id.* at 963. Likewise, in this case, if the School Defendants were forced to wait for a final judgment before appealing the January 8, 2001 order, the right that they sought to protect would be destroyed. This would remain true even though some of the information sought to be protected was made known during the arbitration hearing and during Dr. Brown's deposition because it is likely that much more allegedly protected information would be discovered in the interim. Therefore, the third prong of the collateral order doctrine is satisfied.

Because the three factors of the collateral order doctrine have been met, and

because there is a "bright-line rule permitting appeals from discovery orders requiring the disclosure of content putatively privileged by the attorney-client and work-product privileges", *MicroVote Corp.*, 175 F.3d at 300, this Court's January 8, 2001 Order is appealable under 28 U.S.C. section 1291.