JORDAN, District Judge,
concurring:
I concur in the Court’s opinion, which holds that the doctrine of legislative immunity bars the claims of Ms. Scott against the individual state legislators. Were it not, however, for Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326 (11th Cir.1999), and Moniz v. City of Ft. Lauderdale, 145 F.3d 1278 (11th Cir.1998), I would dismiss the appeal based on Ms. Scott’s lack of Article III standing with respect to the legislators, and not reach the question of legislative immunity.
In Summit Medical, a case involving Alabama’s partial-birth abortion statute, this Court was presented with the interlocutory appeal of various Alabama officials whose Eleventh Amendment immunity defense the district court had rejected. In addition to raising the Eleventh Amendment on appeal, the officials asserted that the plaintiffs lacked standing. Id. at 1334. The Court, noting that an Eleventh Amendment immunity claim was appeal-able without a final judgment under the collateral order doctrine, explained that a denial of a motion to dismiss on justiciability grounds was not so reviewable: “We conclude that the question of standing does not fit within the collateral order doctrine, and, therefore, that [the Alabama officials] may not as of right take an immediate interlocutory appeal on this issue.” Id. at 1334-35. The Court also held, relying on Moniz, 145 F.3d at 1283 n. 1, that it would not exercise its discretion to consider the standing issue under the doctrine of pendent appellate jurisdiction. Summit Medical, 180 F.3d at 1335-36.
If Summit Medical and Moniz preclude us from addressing a threshold justiciability issue such as standing in an interlocutory appeal — aiid like the Court, I think they do — those cases should be reexamined by the Eleventh Circuit sitting en banc. Imagine, for example, that while this case was on appeal, the Georgia legislature passed a law that somehow gave Ms. Scott the relief she sought when she *1258 filed suit. Suppose further that the parties did not advise us of this development because, for their own reasons, they wanted to obtain a definitive appellate ruling on legislative immunity. If we learned of the new legislation on our own, we would have no choice but to inquire as to mootness, at least insofar as any claims for injunctive relief were concerned. See generally Pacific Ins. Co. v. General Dev. Corp., 28 F.3d 1093, 1096 (11th Cir.1994) (an appellate court “must consider mootness sua sponte and, absent an applicable exception to the mootness doctrine, [it] must dismiss any appeal that no longer presents a viable case or controversy”). It would not matter that mootness cannot independently be the subject of an interlocutory appeal under the collateral order doctrine. See, e.g., Brooks v. Georgia Bd. of Elections, 59 F.3d 1114, 1118-19 (11th Cir.1995) (dismissing interlocutory appeal under 28 U.S.C. § 1292(a)(1) on mootness grounds).
Standing should be no different. Federal courts have, in the words of the Supreme Court, an “independent obligation to examine their own jurisdiction, and standing is perhaps the most import of the jurisdictional doctrines.” United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (internal quotations omitted). A federal court may be able to choose which of various “case or controversy” concerns it will address first, e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715 (1999) (taking up statutory standing before Article III standing), but it must resolve all such concerns before reaching the merits. See Arizonans for Official English v. Arizona, 520 U.S. 43, 66, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (“We may resolve the question whether there remains a live case or controversy with respect to Yniguez’s claim without first determining whether AOE or Park has standing to appeal because the former question, like the latter, goes to the Article III jurisdiction of this Court, and the courts below, not to the merits of the case.”).
Legislative immunity is an affirmative defense which can be waived or forfeited, and, unless raised, does not affect the power of a federal court to adjudicate. See, e.g., Kingman Park Civic Ass’n v. Williams, 348 F.3d 1033, 1039 (D.C.Cir.2003) (mayor waived legislative immunity by expressly disavowing it in the district court); Powell v. Ridge, 247 F.3d 520, 531 (3d Cir.2001) (Roth, J., concurring) (“legislative immunity may be waived”); Fraternal Order of Police v. City of Hobart, 864 F.2d 551, 554 (7th Cir.1988) (by failing to invoke legislative immunity in the district court, members of city counsel waived that defense). Indeed, sometimes legislators who are sued decide to forego legislative immunity and defend on the merits. See, e.g., Martinez v. Bush, 234 F.Supp.2d 1275, 1278 (S.D.Fla.2002) (three-judge court) (Florida redistricting case). What this means is that, in deciding the question of legislative immunity, we are reaching the merits of the ease. But according to Supreme Court precedent, that is not permissible. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 1012-13, 140 L.Ed.2d 210 (1998) (rejecting doctrine of “hypothetical jurisdiction,” under which a federal court could assume it had subject-matter jurisdiction for the purpose of deciding the merits). One might be tempted to argue that legislative immunity is one of those threshold issues that a court can nevertheless consider before addressing whether a “case or controversy” exists under Article III. See Tenet v. Doe, — U.S. -, 125 S.Ct. 1230, 1235 n. 4, 161 L.Ed.2d 82 (2005) (explaining that a federal court can choose among threshold grounds to preclude consideration of the merits). The problem with this argument is that the Supreme Court has not treated immunity as one of *1259 those threshold issues. In Calderon v. Ashmus, 523 U.S. 740, 745, 118 S.Ct. 1694, 1697-98, 140 L.Ed.2d 970 (1998), a case involving a claim of Eleventh Amendment immunity by state officials, the Supreme Court ruled that it had to decide whether a “case or controversy” existed before analyzing Eleventh Amendment immunity, and ultimately dismissed the case as non-justiciable because the complaint sought an advisory declaratory judgment.
Like Eleventh Amendment immunity, legislative immunity is not “coextensive with the limitations on judicial power in Article III,” id. at 745 n. 2, 118 S.Ct. at 1697 n. 2, and in my view is not an alternative threshold issue that permits us to avoid the question of standing. As explained below, Ms. Scott’s lack of Article III standing with respect to the legislators is dispositive.
In order to have standing, a litigant must demonstrate injury in fact (i.e., a harm that is “concrete and actual or imminent”), causation (i.e., a “fairly trace[able] connection between the alleged injury ... and the alleged conduct of the defendant”), and redressability (i.e. a “substantial likelihood that the requested relief will remedy the alleged injury”). Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S.Ct. 1858, 1861-62, 146 L.Ed.2d 836 (2000) (internal quotation marks rearranged). Standing, moreover, concerns the congruence or fit between the plaintiff and the defendants. “In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a ‘case or controversy’ between himself and the defendants] within the meaning of Article] III.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis added). Thus, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury. See Linda R.S. v. Richard D., 410 U.S. 614, 616-18, 93 S.Ct. 1146, 1147-49, 35 L.Ed.2d 536 (1973); Okpalobi v. Foster, 244 F.3d 405, 426-27 (5th Cir.2001) (en banc). See also id. at 429 (Higginbotham, J., concurring) (injunction against state official is “utterly meaningless” for “all practical purposes” if the official has “no power to redress the asserted injuries”). The legislators in this case do not have enforcement authority and are not involved in conducting elections in DeKalb County. Their role is limited to making law. See Ga. Const., Art. Ill, § VI; O.C.G.A. § 28-1-1 et seq. An injunction running against them therefore would do nothing to help Ms. Scott. Furthermore, even an extraordinary decree ordering the legislators to vote to repeal or amend Act 401 would be ineffective, for the legislators, by themselves, are powerless to pass laws.[1] Ms. Scott therefore cannot satisfy the redressability prong of Article III standing with respect to the legislators, and we should dismiss her claims against them on that ground.
Because of Summit Medical and Moniz, we have essentially issued an advisory opinion on legislative immunity.[2] A panel should not, however, have the discretion to bypass a core “case or controversy” requirement like Article III standing just *1260 because the appeal is interlocutory in nature. “Without jurisdiction, the court cannot proceed at all in any case. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining for the court is that of announcing that fact and dismissing the case.” Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). Like other circuits, this Court should ensure that there is Article III standing before resolving issues of Eleventh Amendment, sovereign, absolute, or qualified immunity in interlocutory appeals. See, e.g., Webb v. City of Dallas, 314 F.3d 787, 790-91 (5th Cir.2002); Price v. Akaka, 3 F.3d 1220, 1223-24 (9th Cir.1993).

. I do not mean to suggest that such an directive could be legally issued, and merely use the example to explain why Ms. Scott lacks standing.

. In the Eleventh Circuit, a panel is bound by a prior decision unless there is an intervening Supreme Court decision overruling it or conflicting with it. See, e.g., In re Provenzano, 215 F.3d 1233, 1234 (11th Cir.2000). The Supreme Court decisions in Arizonans for Official English, Ashmus, Citizens for Better Environment, and Ortiz predate Summit Medical. As a result, Summit Medical is binding.