# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Penn School District; | : | |
| Panther Valley School District; | : | |
| The School District of Lancaster; | : | |
| Greater Johnstown School District; | : | |
| Wilkes-Barre Area School District; | : | |
| Shenandoah Valley School District; | : | |
| Jamella and Bryant Miller, parents of | : | |
| K.M., a minor; Sheila Armstrong, | : | |
| parent of S.A., minor; Tyesha | : | |
| Strickland, parent of E.T., minor; | : | |
| Angel Martinez, parent of A.M., | : | |
| minor; Barbara Nemeth, parent of | : | |
| C.M., minor; Tracey Hughes, parent | : | |
| of P.M.H., minor; Pennsylvania | : | |
| Association of Rural and Small Schools; | : | |
| and The National Association for the | : | |
| Advancement of Colored | : | |
| People-Pennsylvania State Conference, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 587 M.D. 2014 |
| | : | |
| Pennsylvania Department of Education; | : | |
| Joseph B. Scarnati III, in his official | : | |
| capacity as President Pro-Tempore of | : | |
| the Pennsylvania Senate; Bryan Cutler, | : | |
| in his official capacity as the | : | |
| Speaker of the Pennsylvania House of | : | |
| Representatives; Tom W. Wolf, | : | |
| in his official capacity as the Governor | : | |
| of the Commonwealth of Pennsylvania; | : | |
| Pennsylvania State Board of Education; | : | |
| and Pedro Rivera, in his official | : | |
| capacity as the Acting Secretary of | : | |
| Education, | : | |
| Respondents | : | |

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  August 26, 2020**

Presently before the Court are applications for protective orders filed by Respondent Bryan Cutler, Speaker of the Pennsylvania House of Representatives, and Stanley E. Saylor, a nonparty and Chairman of the Pennsylvania House of Representatives Appropriations Committee, seeking to prevent Petitioners from taking their depositions.  Upon consideration of the parties' arguments,[1] the Court grants the applications to the extent Petitioners are prohibited from deposing Speaker Cutler or Chairman Saylor at this time.  However, the Court will provide Petitioners with leave of court to serve written discovery on the limited topics identified herein.

## I.     BACKGROUND

By way of very brief background, Petitioners initiated this action in 2014 challenging the constitutionality of funding public education within the Commonwealth.  Following a remand by the Pennsylvania Supreme Court in September 2017, the Court established a case management schedule to move this matter toward trial, which had to be extended numerous times.  As fact discovery was finally winding down, although the parties had been working diligently at discovery and largely handling any disputes internally for years, given the nature of the case, not surprisingly, a few discovery issues arose that required court

---

[1] Although it was not yet pending, during argument on several other discovery motions on June 30, 2020, counsel for Speaker Cutler indicated an intent to file an application for a protective order.  Thus, the Court, in the interest of efficiency, heard oral argument on Speaker Cutler's request at that time.  Subsequently, Speaker Cutler filed a formal application and memorandum of law, to which Petitioners responded.  Thereafter, Chairman Saylor filed his application seeking a protective order.  Because of the interplay between the two applications, the Court heard oral argument on both applications on August 6, 2020.

intervention. These discovery disputes involved whether certain high ranking government officials, most of whom are Respondents in this action, would be required to sit for a deposition.

Recently, the Court disposed of various applications involving Governor Tom W. Wolf and Secretary of Education Pedro Rivera. *William Penn Sch. Dist. v. Pa. Dep't of Educ.* (Pa. Cmwlth., No. 587 M.D. 2014, filed July 24, 2020). There, Speaker Cutler sought to compel the deposition of both in their official capacities, whereas Petitioners sought to compel Secretary Rivera to testify as to his time as former superintendent of The School District of Lancaster, a Petitioner in this matter. Governor Wolf and Secretary Rivera also filed applications, similar to the instant Applications, seeking to prevent, or at least limit, their respective depositions. Although some of the legal issues differed from those presented here, one issue remained common: what were the parameters of deposing a high ranking government official.

Ultimately, the Court held Governor Wolf's testimony was protected by the chief executive privilege and Speaker Cutler did not show that "this [wa]s an 'extreme case' and [that] there [wa]s a compelling interest or need for the testimony." *Id.*, slip op. at 12. Specifically, the Court explained that many of the topics of inquiry identified related to general information that was obtainable from other sources. *Id.* at 13. As for public statements Governor Wolf made, which Governor Wolf conceded would not be privileged, the Court held that Speaker Cutler could utilize less intrusive methods of discovery to obtain that information and thus, the Court granted Speaker Cutler leave of court to serve written discovery requests related to that topic. *Id.* at 13-14.

3

With regard to Secretary Rivera, the Court held Speaker Cutler could not depose Secretary Rivera about general information on appropriating funds and passing legislation, similar to the Court's holding involving Governor Wolf. *Id.* at 17. However, the Court permitted Speaker Cutler to depose Secretary Rivera about his public statements primarily because the Court was already requiring Secretary Rivera to sit for a deposition to respond to questions by Petitioners about his time as superintendent at one of the Petitioner School Districts. *Id.* at 18, 20-21.

With this background in mind, the Court turns to the instant Applications.


### A.    <u>Speaker Cutler's Application</u>

On July 7, 2020, Speaker Cutler filed his Application, alleging as follows. On June 22, 2020, Petitioners served a notice of deposition on Speaker Cutler, which is the same date he was substituted as a Respondent to replace former Speaker Michael C. Turzai who resigned.[2] According to Speaker Cutler, Petitioners did not identify the areas about which they intended to question him, but Speaker Cutler suspects they are the same areas about which Petitioners wanted to depose former Speaker Turzai, which are as follows:

> a. The role that public education plays in preparing students to gain the skills, knowledge, and experiences needed to be college and career ready and informed citizens.
>
> b. The cost of educating students in Pennsylvania to meet the state standards set by the Legislature and/or the State Board of Education.

---

[2] Speaker Cutler was elected as the new Speaker on June 22, 2020, and was substituted as a respondent for former Speaker Turzai a few days later pursuant to Pennsylvania Rule of Appellate Procedure 502(c), Pa.R.A.P. 502(c).

c. Whether the resources provided to school districts in Pennsylvania are sufficient for students in each district to meet performance expectations and ensure that students are college and career ready.

d. Whether current levels of academic achievement for students meet the goals established by the Commonwealth.

e. Methods of funding public education in Pennsylvania, including adoption and implementation of school funding formulas and discretionary funding for individual school districts.

f. Funding disparities between high-wealth and low-wealth school districts.

g. Whether funding issues or resource deficiencies in individual school districts were caused in whole or in part by local mismanagement of funds.

h. Whether school districts have failed to make optimal use of their various taxing powers to generate funding for schools.

i. Whether the costing-out study was based on valid methodology and whether its conclusions were correct.
j. The Basic Education Funding Commission.

k. The Special Education Funding Commission.

l. Adoption and revision of Pennsylvania's academic assessments, including the Keystone Exams, the Common Core Standards, and the P[ennsylvania System of School Assessment].

m. Knowledge of the previous topics as it relates to school districts within their [legislative] districts.

n. Non-privileged statements and communications concerning the previous topics.

(Cutler Application ¶ 6.)

Speaker Cutler maintains that his testimony would be protected by legislative privilege under the Speech and Debate Clause of the Pennsylvania Constitution, Pa. Const., art. 2, § 15, as any knowledge he has would arise from his role as a legislator.

5

He urges the Court to follow *League of Women Voters v. Commonwealth*, 177 A.3d 1010 (Pa. Cmwlth. 2017) (*League of Women Voters I*), and apply the legislative privilege to him. He further contends that several of the subject areas relate to topics that are geared towards educators, which he is not.

Speaker Cutler acknowledges that two House staff members, David Donley, who is executive director of the House Appropriations Committee, and Jeffrey Miller, who is a budget analyst for the House Appropriations Committee, were identified as potential fact witnesses.[3] However, he asserts this does not waive his privilege. He argues that United States Supreme Court precedent requires explicit and unequivocal renunciation of the privilege, *United States v. Helstoski*, 442 U.S. 477, 491 (1979), which did not occur here. He further argues that Petitioners misunderstand the purpose of the staffers' prospective testimony. Speaker Cutler states that they will not be asked about matters said or done in the General Assembly, or their opinions about the reasonableness of legislative action. Rather, according to Speaker Cutler, the "testimony will be to marshal for the Court some of the numerous legislation that has been implemented" and "publicly available data regarding state and local spending on the public school system." (Cutler Memorandum of Law at 9-10.) Moreover, Speaker Cutler notes that three legislators are listed as trial witnesses for Petitioners, and all of them have indicated during

---

[3] Mr. Donley and Mr. Miller were deposed by Petitioners on July 17 and 21, 2020, respectively. According to counsel for Speaker Cutler, Mr. Donley and Mr. Miller did invoke the Speech and Debate Clause as to certain questions. Counsel explained the staff members were permitted to respond to questions that sought information that was publicly available, such as reports, data from the Pennsylvania Department of Education, votes, and legislation that was enacted, but questions about internal communications or the deliberative process were off limits unless the information was otherwise publicly available. A final transcript of Mr. Miller's deposition was subsequently filed with the Court, which confirms the privilege was asserted as to certain topics.

6

depositions that, despite their willingness to testify on Petitioners' behalf, they are not waiving their legislative privilege.

Speaker Cutler asserts that *Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001), which Petitioners cite, is distinguishable, as in that case, the legislative witnesses intervened as defendants. As such, the Third Circuit Court of Appeals held they cannot assert legislative immunity as both a shield and a sword. In contrast, here, Speaker Cutler is an involuntary party, having been named by Petitioners as a respondent.

To the extent any of the subject areas may fall outside the scope of legislative immunity, Speaker Cutler argues he has no special knowledge that compels a deposition. Thus, even though he may have made public statements about educational funding, Petitioners must still show that he possesses unique factual knowledge. Further, although Speaker Cutler could describe specific statutes and budgets that were passed or the amount of funding provided, this same information is available through less intrusive means. He cites *Commonwealth v. Vartan*, 733 A.2d 1258 (Pa. 1999), for the proposition that high ranking government officials should not ordinarily be required to sit for a deposition.

Apparently cognizant that some of these arguments run counter to the assertions in his application to compel the depositions of Governor Wolf and Secretary Rivera and his response to their applications to quash the subpoenas or, alternatively, for protective orders,[4] Speaker Cutler asserts the instant Application

---

[4] In relation to Speaker Cutler's application seeking to prevent his own deposition, Governor Wolf and Secretary Rivera filed a memorandum of law opposing Speaker Cutler's Application for a Protective Order in part wherein they responded to his attempts to distinguish his attempt to depose them from Petitioners' attempt to depose him. As the applications related to Governor Wolf and Secretary Rivera were disposed of in the Court's opinion in *William Penn School District v. Pennsylvania Department of Education* (Pa. Cmwlth., No. 587 M.D. 2014, filed **(Footnote continued on next page…)**

7

"presents different issues." (Cutler Memorandum of Law at 14.) First, he points out that legislative privilege does not apply to those individuals. Second, according to Speaker Cutler, his "request to depose the Governor and Secretary is based upon specific, identified public statements that are directly relevant to the central issue of whether the General Assembly fulfilled its constitutional duty. . . ." (*Id.*)

## B. Petitioners' Response to Speaker Cutler's Application

Petitioners argue Speaker Cutler is taking an entirely different approach than his predecessor and is asserting that the Speech and Debate Clause "categorically prohibits" Petitioners from deposing him, despite Speaker Cutler's intention of introducing the same evidence through staff members he has identified as witnesses. (Petitioners' Memorandum of Law at 1.) Petitioners maintain the privilege is not absolute, which even his predecessor acknowledged. Petitioners further state any reliance on *League of Women Voters I*, for the assertion of legislative privilege during discovery must be questioned based upon the Supreme Court's opinion in that case on appeal, *League of Women Voters v. Commonwealth*, 178 A.3d 737, 767 n.38 (Pa. 2018) (*League of Women Voters II*), which cautioned against such reliance, at least with respect to legislative privilege.

Petitioners allege there are a number of nonprivileged areas that are appropriate topics of deposition. As an example, it notes that newsletters, press releases, and speeches would not be protected. *Uniontown Newspapers, Inc. v. Roberts*, 839 A.2d 185, 195 (Pa. 2003). Other areas of inquiry that would be proper in Petitioners' view include the school funding process, relevant budgets, and public legislation and actions taken by the General Assembly. Although Speaker Cutler

July 24, 2020), the Court does not address Governor Wolf's or Secretary Rivera's arguments with regard to Speaker Cutler further here.

8

has withdrawn his application to compel the testimony of two non-party legislative leaders,[5] Petitioners argue the subject areas he identified in relation to them – the school funding process and legislation enacted relating to the public schools, their role in that process including their sponsorship or votes, and particular actions taken by the General Assembly – are outside the privilege. Petitioners deny wanting to question Speaker Cutler about "the drafting, negotiating, and debating of legislation or fact finding relating to the drafting of proposed legislation." (Petitioners' Memorandum of Law at 13.)

In addition, Petitioners argue Speaker Cutler cannot invoke the privilege as both a sword and a shield as it would be fundamentally unfair. Petitioners allege they seek to solicit the same information from Speaker Cutler as Speaker Cutler intends to present through the staff members he identified as fact witnesses. Thus, according to Petitioners, Speaker Cutler has waived any privilege he may have. Petitioners distinguish *Helstoski* on the basis that its heightened waiver standard relates to protecting legislators from criminal prosecution. Citing *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012), Petitioners argue that in civil cases, legislative privilege may be implicitly waived by testifying as to privileged matters or sharing such information with outsiders. Further, because a legislator and his staff are one for purposes of the privilege, they should also be one for purposes of waiver, Petitioners argue. Petitioners assert they reached an agreement with another legislative respondent, Joseph B. Scarnati III, President Pro Tempore of the

_____

[5] As part of his application to compel Governor Wolf and Secretary Rivera to testify at a deposition, Speaker Cutler also sought to compel the depositions of Frank Dermody, Minority Leader of the Pennsylvania House of Representatives, and Jay Costa, Minority Leader of the Pennsylvania Senate, both of whom filed their own applications to quash. However, Speaker Cutler has since withdrawn the deposition subpoenas, and the Minority Leaders withdrew their respective applications to quash. The parties' stipulation to this effect was approved by the Court on June 29, 2020.

9

Pennsylvania Senate, wherein Senator Scarnati agreed not to offer evidence of any statements or testimony by himself, other senators, or staff related to certain subject areas that Senator Scarnati contended were protected by the Speech and Debate Clause in exchange for Petitioners withdrawing the notice of deposition they served on Senator Scarnati. (*See* Petitioners' Memorandum of Law, Exhibit 2.) According to Petitioners, they made a similar offer to Speaker Cutler, but he has declined to so stipulate.

As for Speaker Cutler's attempt to invoke the high-ranking government official exception, Petitioners argue that this exception is inapplicable in that it applies only if the official lacks personal knowledge and alternative witnesses are not readily available. Petitioners assert only Speaker Cutler can authenticate and provide testimony related to his own public statements.

### C.    Speaker Cutler's Reply

Speaker Cutler filed a Reply Memorandum of Law, wherein he responds to Petitioners' arguments as follows. Contrary to Petitioners' claim, Speaker Cutler does not contend that legislators are immune from discovery in all suits and claims. In addition, the Supreme Court's discussion questioning the applicability of the legislative privilege in *League of Women Voters II* is dicta. He argues that the Speech and Debate Clause plainly provides a legislator shall not be "questioned in any other place," which includes a deposition room. (Cutler Reply Memorandum at 3.) Speaker Cutler argues that in order to depose a legislator, the party seeking discovery must demonstrate the proposed deponent "possess[es] unique factual knowledge that cannot be derived from other sources," which Petitioners have not demonstrated here. (*Id.* at 4). Speaker Cutler asserts that Petitioners identify two

areas of inquiry: "(1) public statements made by the Speaker (most or all of which predate his election as Speaker), and (2) the laws and budgets enacted as part of the school funding process." (*Id.* at 1.) Speaker Cutler argues his statements alone have no legal significant and "their relevance can come – if at all – only by linking those views to particular legislative action or inaction," into which there can be no inquiry because those areas would fall within the privilege. (*Id.* at 6.) He distinguishes his general statements that do not refer to any specific law or legislative act from Governor Wolf's, which, according to Speaker Cutler, relate to specific legislation. (*Id.* at 6 n.2.) Speaker Cutler denies that any statements made by former Speaker Turzai related to the scope of the privilege can be used as admissions against him. As for Petitioners' waiver arguments, Speaker Cutler states he does not intend to testify at trial and the staff members who will testify have been deposed by Petitioners and do not intend to testify as to privileged matters. He reiterates that the purpose of the Mr. Donley's and Mr. Miller's testimony "is simply a matter of trial presentation" and is "the most effective way to present to the Court evidence regarding the system the legislature has implemented to provide for the maintenance and support of a thorough and efficient system of public education." (*Id.* at 10.)

### D.  **Chairman Saylor's Application**

In May 2020, Petitioners first served a notice of deposition seeking to depose Chairman Saylor, who is not a party to this litigation. Following attempts to reschedule the deposition, Chairman Saylor filed his application seeking a protective order on July 10, 2020. Therein, Chairman Saylor alleges as follows. Chairman Saylor has served in his current capacity as chairman of the House Appropriations Committee since 2016 and previously chaired the House Education Committee.

11

Petitioners seek to depose Chairman Saylor, but according to the application, Petitioners have not identified the topics for deposition. Chairman Saylor presumes he will be questioned "about his role in appropriating educational funds," which he asserts is protected by the Speech and Debate Clause. (Saylor Application ¶ 11.) Chairman Saylor asserts any knowledge he has would necessarily fall within the legitimate legislative sphere, which includes factfinding, debating and passing legislation, and is protected by the Speech and Debate Clause that the courts have broadly construed. He further asserts that to the extent Petitioners seek nonprivileged information, such as the amount of funding, that information is obtainable through other means. Furthermore, he should not be required to sit for a deposition based on the Supreme Court's holding in *Vartan* that "high government officials should not ordinarily be required to give depositions." (*Id.* ¶ 28 (quoting *Vartan*, 733 A.2d at 1266).)

### E. Petitioners' Response to Chairman Saylor's Application

Petitioners respond to Chairman Saylor's Application as follows. Petitioners dispute that the Speech and Debate Clause provides Chairman Saylor with absolute immunity from being deposed. As with Speaker Cutler's Application, Petitioners point out that the Court's ruling on legislative privilege in *League of Women Voters I* was called into question by the Supreme Court in *League of Women Voters II*. Moreover, Petitioners claim the cases upon which Chairman Saylor relies are inapposite as they involve immunity from suit.

Petitioners allege Chairman Saylor has nonprivileged information relevant to this matter. As an example, they cite numerous public statements he has made about the problems with educational funding in Pennsylvania, including a statement by

12

Chairman Saylor in which he admitted The School District of Lancaster, which is a Petitioner in this matter, is underfunded. Petitioners also claim they can depose Chairman Saylor on topics "casually or incidentally related to legislative affairs but not a part of the legislative process itself," such as the "adoption and implementation of school funding, formulas, discretionary funding for individual school districts, and local school district tax effort and ability to tax." (Petitioners' Answer to Saylor's Application at 12 (quoting *United States v. Brewster*, 408 U.S. 501, 513 (1972)).) They also allege he can "describe public proposals for alternative methods of funding by his committee and the House and explain publicly available data regarding state and local education spending." (*Id.*) Based upon his public statements, Petitioners also argue they can depose Saylor about funding disparities between districts, the cost of educating students to meet state standards, and whether the current levels of academic achievement meet the goals set by the Commonwealth. Moreover, these topics are consistent with areas about which Mr. Miller testified at his deposition, without objection. Petitioners contend these areas do not require Chairman Saylor to disclose any deliberations or communications that would otherwise be protected by the Speech and Debate Clause.

Petitioners further assert, as they did with Speaker Cutler, that the high ranking government official exception does not apply because Chairman Saylor has personal knowledge about his own statements and he plays a "central unique leadership role in the education funding system being challenged." (*Id.* at 14.) Also similar to Petitioners' response to Speaker Cutler's Application, Petitioners argue that by Speaker Cutler identifying the staff members who "work directly for Chairman Saylor" as fact witnesses for trial, Chairman Saylor has waived any legislative privilege. (*Id.*)

13

Finally, Petitioners assert they first notified Chairman Saylor in February 2020 that they wanted to depose him. Yet, Chairman Saylor never objected on any basis until now. Therefore, Chairman Saylor's delay in seeking the protective order is prejudicial as the discovery deadline has passed and Petitioners cannot seek alternative sources of the information.

### F. Chairman Saylor's Reply

Chairman Saylor filed a reply to Petitioners' answer opposing his Application for a protective order. Therein, he acknowledges that Petitioners first reached out in February 2020 to schedule his deposition, but shortly thereafter, the COVID-19 pandemic started and non-essential businesses, which included law firms, were closed, and the Supreme Court declared a statewide judicial emergency. As a result, Chairman Saylor alleges the depositions that were scheduled for the end of March could not proceed. In late April, Petitioners' counsel contacted counsel for Chairman Saylor requesting to schedule the deposition within five weeks. In the email request, Chairman Saylor alleges, Petitioners' counsel conceded that scheduling a deposition would "not bias [counsel for Chairman Saylor's] ability to file any motions, should [counsel] plan on doing that." (Saylor Reply at 5 (quoting Petitioners' Memorandum of Law, Ex. 4).) In mid-May, Petitioners' counsel renewed the request. Counsel for Chairman Saylor advised she had not been able to communicate with Chairman Saylor because "he had been in hearings consistently due to the impending budget deadline and the overwhelming issues created by the pandemic." (*Id.* at 6.) In late May, Petitioners noticed Chairman Saylor's deposition, which was again delayed due to Chairman Saylor's schedule. Thereafter, former Speaker Turzai resigned, resulting in more legislative meetings. When

14

Petitioners relayed their desire to depose Chairman Saylor by the close of discovery, which was July 15, 2020, Chairman Saylor's counsel advised she would be filing an application seeking a protective order, which she promptly did.

As to the merits of the Application, Chairman Saylor reiterates that his testimony is protected by the Speech and Debate Clause because it falls within the legitimate legislative sphere. In response to Petitioners' argument about the validity of *League of Women Voters I*, Chairman Saylor points out that the Supreme Court's footnote was dicta, as evidenced by the Supreme Court expressly noting that it was not resolving the privilege issue. He claims a number of courts, including the United States Supreme Court, Fourth Circuit Court of Appeals, the District Court of Maryland, and a Pennsylvania County Court of Common Pleas, have recognized the Speech and Debate Clause as an evidentiary privilege, in addition to providing immunity.

He also denies having any non-privileged knowledge of relevant facts. Two of the three public statements Petitioners cite, Chairman Saylor alleges, were made either on the House floor or during Appropriations Committee hearings. Therefore, they come within the ambit of the Speech and Debate Clause. As for Petitioners' desire to question him regarding "how [the budget] process works, why districts are underfunded, and why the Legislature is incapable of fixing the system," he claims these topics are irrelevant because the statements were made before the new funding formula was adopted. (*Id.* at 13 (quoting Petitioners' Answer at 11-12).) Likewise, topics such as the current approach to funding, public proposals by the committee, and explaining publicly available data would fall within his legislative function because it is rooted in his position. Moreover, he argues, like Speaker Cutler, that any personal views on funding are not relevant to the constitutionality of the system.

15

Chairman Saylor also reasserts he is protected by the high ranking government official exception. In support thereof, he argues there are less burdensome means of obtaining the information, much of which is publicly available. Furthermore, he argues it is cumulative of information already obtained from Mr. Miller at his deposition. Relatedly, Chairman Saylor denies that Mr. Miller's or Mr. Donley's testimony constitutes waiver of his privilege. He asserts neither are his aides; rather they are employed by the Appropriations Committee. Even if they were considered his aides, he claims they will only testify as to facts and to provide context for how funding works, which is not privileged. Like Speaker Cutler, he also argues waiver is a heightened standard, which must be explicit.

Finally, Chairman Saylor denies any gamesmanship on his part or that Petitioners have suffered any prejudice in him seeking a protective order when he did. He argues that when the parties first started scheduling depositions, Petitioners acknowledged that he could later assert privilege. Moreover, any delay is attributable to the pandemic, passing a budget, and replacing the former Speaker. He also claims it was not clear that he could file a motion for a protective order during this time because of the limitation on essential functions. Finally, because Petitioners have offered to depose him outside the discovery period, any claim of prejudice is meritless.

## II.   DISCUSSION

### A.   General Legal Principles

As a general rule, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim

16

or defense of any other party." Pennsylvania Rule of Civil Procedure 4003.1(a), Pa.R.C.P. No. 4003.1(a). "Whether information is relevant depends upon the nature and the facts of the case, and any doubts are to be resolved in favor of relevancy." *Ario v. Deloitte & Touche, LLC*, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007). "It is not [a] ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible information." Pa.R.C.P. No. 4003.1(b).

A party or person may seek a protective order pursuant to Rule 4012 of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. No. 4012. A protective order may only be issued, upon "good cause shown," that it is necessary "to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense." Pa.R.C.P. No. 4012(a). A protective order may prohibit discovery, allow discovery but only on specific terms and conditions, provide that certain matters may not be inquired into, or otherwise limit the scope of discovery. Pa.R.C.P. No. 4012(a)(1), (2), (4), (5). The party seeking to prevent discovery bears the burden of showing the material sought is not discoverable. *Ario*, 934 A.2d at 1293.

Speaker Cutler and Chairman Saylor assert their testimony is protected by the Speech and Debate Clause, which is found in article 2, section 15 of the Pennsylvania Constitution and provides:

> The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

Pa. Const., art. 2, § 15.

17

The purpose behind the provision is to "protect legislators from judicial interference with their legitimate legislative activities." *Consumers Educ. & Prot. Ass'n v. Nolan*, 368 A.2d 675, 680-81 (Pa. 1977). Accordingly, the privilege is to be broadly interpreted to achieve this end. *Id.*; *see also Smolsky v. Pa. Gen. Assembly*, 34 A.3d 316, 321 (Pa. Cmwlth. 2011). Our Supreme Court has said that "[t]he Speech and Debate Clause prohibits inquiry into those things generally said or done in the House or Senate in the performance of official duties and into the motivation for those acts." *Pa. Sch. Bds. Ass'n, Inc. v. Commonwealth Ass'n of Sch. Adm'rs, Teamsters Local 502*, 805 A.2d 476, 486 (Pa. 2002). The privilege is absolute so long as it falls within "the sphere of legitimate legislative activity." *League of Women Voters I*, 177 A.3d at 1003. To fall within the scope of the Speech and Debate Clause, the Pennsylvania Supreme Court, citing the United States Supreme Court's decision in *Gravel v. United States*, 408 U.S. 606, 625 (1972), held that the acts "[m]ust be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Uniontown Newspapers*, 839 A.2d at 195 (quoting *Gravel*, 408 U.S. at 625). Furthermore, the privilege extends to "fact-finding, information gathering, and investigative activities, which are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation." *League of Women Voters I*, 177 A.3d at 1003 (citation and internal quotation omitted). The privilege also extends to legislators' "voting, [] participation in legislative committee hearings, and [] preparation of committee reports." *Dickey v. CBS, Inc.*, 387 F.Supp. 1332, 1334

18

(E.D. Pa. 1975).[6] The motive or purpose of a legislative act is an impermissible area of inquiry. *League of Women Voters I*, 177 A.3d at 1003. However, because statements made outside of the legislative forum to constituents "is a political, not a legislative activity, it is not entitled to the protection of the Speech [and] Debate Clause." *Dickey*, 387 F.Supp. at 1335.

Recently, in *League of Women Voters I*, the Court held that the legislative respondents in that matter were entitled to absolute legislative privilege. The Court reasoned that passage of an act redrawing congressional district lines "was unquestionably a legitimate legislative activity" and the actions of the legislators were "within the sphere of this legitimate legislative activity" such that the Court lacked authority to compel them to either testify or produce documents related to their "intentions, motivations, and activities . . . with respect to the consideration and passage of [the a]ct." *Id.* at 1005. Accordingly, the Court quashed a number of subpoenas directed to individuals who were described as "current and/or former employees, legislative aides, consultants, experts and agents of Legislative Respondents." *Id.* at 1006. The Court also invoked the Speech and Debate Clause to strike certain parts of subpoenas that were directed to third parties that sought communications of current and former legislators and their staff. *Id.* at 1008.

On appeal, after stating it did not need to resolve the issue of "whether the Speech and Debate Clause confers a privilege protecting [] information from discovery and use at trial in a case . . . involving a challenge to the constitutionality of a statute," the Supreme Court in *League of Women Voters II* "caution[ed] against

---

[6] Because the Pennsylvania Speech and Debate Clause is modeled on its federal counterpart, the Speech or Debate Clause, which is found in Article I, Section 6, Clause 1 of the United States Constitution, "decisions interpreting the federal clause are instructive." *Uniontown Newspapers*, 839 A.2d at 195; *see also Lincoln Party by Robinson v. General Assembly*, 682 A.2d 1326, 1333 (Pa. Cmwlth. 1996).

reliance on the Commonwealth Court's ruling" in this regard. 178 A.3d at 767 n.38. Specifically, in a footnote, the Supreme Court stated:

> This Court has never interpreted our Speech and Debate Clause as providing anything more than immunity from suit, in certain circumstances, for individual members of the General Assembly. Although not bound by decisions interpreting the federal Speech or Debate Clause in Article I, Section 6 of the United States Constitution, we note that the high Court has recognized an evidentiary privilege only in cases where an individual legislator is facing criminal charges. To date, the United States Supreme Court has never held that an evidentiary privilege exists under the Speech or Debate Clause in lawsuits challenging the constitutionality of a statute. Further, we are not aware of any precedent to support the application of any such privilege to information in the possession of third parties, not legislators.

*Id.*

## B. Applicability of the Legislative Privilege

As a threshold question, the Court must determine whether the Speech and Debate Clause applies to discovery in a case, such as this, where the constitutionality of funding public education is called into question. It is without question that the bulk of the case law involving the Speech and Debate Clause arises in the context of immunity from liability. *See, e.g.*, *Smolsky*, 34 A.3d at 322; *Firetree, Ltd. v. Fairchild*, 920 A.2d 913 (Pa. Cmwlth. 2007); *Common Cause/Pennsylvania v. Commonwealth*, 710 A.2d 108 (Pa. Cmwlth. 1998); *Lincoln Party by Robinson v. Gen. Assembly*, 682 A.2d 1326, 1333 (Pa. Cmwlth. 1996).

There is some precedent, although not Supreme Court precedent, in which the Speech and Debate Clause was invoked seeking to prevent the production of certain documents or testimony. In *Hamilton v. Hennessey*, 783 A.2d 852 (Pa. Cmwlth. 2001), the Pennsylvania House Republican Caucus sought to quash subpoenas to

produce documents related to how the House Caucus determined the number of newsletters each candidate could mail, as well as any financial records related to those mailings. The Court held the Speech and Debate Clause did "not bar inquiry into whether the newsletters constituted campaign literature" and, therefore, refused to quash the subpoena on this ground. *Id.* at 855. The Court did, however, find the subpoenas were overly broad in scope and time and quashed the subpoenas, in part, on that basis. *Id.* On the other hand, a trial court found the privilege did apply to prevent the deposition of a state senator in a defamation action. *Melvin v. Doe*, 48 Pa. D. & C. 4th 566 (2000).[7] There, the defendants sought to depose a senator about whether he was contacted by anyone encouraging him to recommend any local attorneys to the governor to fill a vacancy on the common pleas bench. The senator, who was not a party to the action, sought to quash the subpoena, arguing that any information related to such appointments would have been obtained in his legislative capacity and thus was privileged. *Id.* at 570. Judge Wettick of the Court of Common Pleas of Allegheny County examined a number of cases involving the Speech and Debate Clause and the purpose behind its protection before concluding that such information would be protected. *Id.* at 575-76.

Federal district courts have also considered the legislative privilege in relation to discovery requests. For instance, in *Dickey*, a plaintiff in a libel action against a television network sought to depose a United States representative. The representative filed for a protective order and sought to quash the subpoena on the basis that any statements he made about the plaintiff would have been privileged by

___

[7] Although the Court is not bound by decisions of a court of common pleas, such decisions may be considered for their persuasive value. *Township of Washington v. Township of Upper Burrell*, 184 A.3d 1083, 1091 n.6 (Pa. Cmwlth. 2018).

21

the federal Speech or Debate Clause.[8]  The district court acknowledged that the Speech or Debate Clause is often broadly interpreted to effectuate its purpose and protects legislative acts.  *Dickey*, 387 F.Supp. at 1334.  However, the district court explained "[n]ot everything that a [c]ongressman may regularly do . . . is a legislative act."  *Id.*  Citing the United States Supreme Court's opinion in *Brewster*, the district court found a number of activities are not afforded such protection:

> These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress.  The range of these related activities has grown over the years.  They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections.  Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases.  But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

*Dickey*, 387 F.Supp. at 1334 (quoting *Brewster*, 408 U.S. at 512).  Thus, the district court concluded that any statements the representative made on a television broadcast were political activities that were not protected by the Speech or Debate Clause, which only protected legislative activities.  *Id.* at 1336.  The district court also examined the issue under Pennsylvania's Speech and Debate Clause, which it found closely tracks the federal provision, and concluded the statements would not be protected under the state version either.  *Id.*

Chairman Saylor cites a number of other cases that he contends supports extending application of the Speech and Debate Clause beyond immunity from

---

[8] Article 1, Section 6, Clause 1 of the United States Constitution provides "The Senators and Representatives . . . [,] for any Speech or Debate in either House, [] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl.1.

liability to a testimonial or evidentiary privilege. In addition to *Melvin*, discussed above, Chairman Saylor cites a United States Supreme Court decision, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975), a Fourth Circuit Court of Appeals case, *Schlitz v. Commonwealth of Virginia*, 854 F.2d 43 (4ᵗʰ Cir. 1988), and a district court case from Maryland, *2BD Associates Limited Partnership v. County Commissioners for Queen Anne's County*, 896 F.Supp. 528 (D.Md. 1995). In both *Eastland* and *Schlitz*, however, the Speech or Debate Clause was invoked in an attempt to bar the action itself, although in *Schlitz*, the court also stated that legislators could not be forced to testify regarding conduct in their legislative capacities.[9] *Eastland*, 421 U.S. at 501; *Schlitz*, 854 F.2d at 45-46. The district court's decision in *2BD Associates*, however, did directly address whether Virginia's Speech and Debate Clause also extends to discovery calling "the effect of the doctrine is twofold" because "it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege." 896 F.Supp. at 531.

Although the above cited cases do not involve challenges to the constitutionality of legislation, given the plain language of the Speech and Debate Clause, that "for any speech or debate in either House[, legislators] shall not be questioned in any other place," Pa. Const., art. 2, § 15, and the courts' broad

---

[9] In *Eastland*, the United States Supreme Court explained the breadth of the federal Speech or Debate Clause, suggesting it could extend beyond immunity. It stated:

> The applicability of the Clause to private civil actions is supported by the absoluteness of the terms "shall not be questioned," and the sweep of the term "in any other Place." In reading the Clause broadly we have said that legislators acting within the sphere of legitimate legislative activity "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."

421 U.S. at 503 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)).

23

interpretation of the privilege, *Consumers Education & Protection Association*, 368 A.2d at 680-81, there may be circumstances where the Speech and Debate Clause could prohibit a state legislator from being deposed about certain matters even when the constitutionality of a statute is at issue. However, this Court understands and shares the Pennsylvania Supreme Court's concerns about allowing a legislator to invoke the Speech and Debate Clause to prevent discovery of information that goes to the heart of a challenge to the constitutionality of a statute, particularly if a petitioner is prevented from making its case against the constitutionality of a law based upon a legislator's invocation of the privilege.

At least with respect to the general areas of inquiry that Petitioners have identified, this Court, similar to the Supreme Court in *League of Women Voters II*, does not need to reach the issue of whether the Speech and Debate Clause can be invoked to prohibit discovery from a legislator in a case where the constitutionality of legislation is being challenged because the Court is not convinced the topics that Petitioners identified fall within the ambit of the Speech and Debate Clause.[10] The topics identified by Petitioners are purely factual topics that are matters of public information and do not seek to inquire into internal deliberations or communications about the consideration of proposed legislation, *Uniontown Newspapers*, 839 A.2d at 195, or the motivation behind legislative acts, *Pennsylvania School Boards Association,* 805 A.3d at 486, which would invoke the Speech and Debate Clause. Importantly, Petitioners admit they do **not** desire to ask Speaker Cutler about

---

[10] Although it is not necessary to reach this issue with relation to the general information Petitioners seek from Speaker Cutler and Chairman Saylor, because two of the statements Chairman Saylor made that Petitioners have identified as topics of inquiry occurred on the House floor and in Committee proceedings, the Court must determine whether those statements are protected by the Speech and Debate Clause. Because these statements are materially different from the general topics identified by Petitioners, the Court will discuss the discoverability of any statements Speaker Cutler and Chairman Saylor made separately.

24

"drafting, negotiating, and debating of legislation or fact finding relating to the drafting of proposed legislation." (Petitioners' Memorandum of Law at 13.) Instead, Petitioners seek to question Speaker Cutler generally about "the school funding process, relevant budgets, and public legislation and actions undertaken by the General Assembly in furtherance of its constitutional duty." (*Id*. at 12.) Petitioners likewise seek to depose Chairman Saylor on more general topics such as the "adoption and implementation of school funding, formulas, discretionary funding for individual school districts, and local school district tax effort and ability to tax." (Petitioners' Answer to Saylor's Application at 12.) They also argue he can "describe public proposals for alternative methods of funding by his committee and by the House and explain publicly available data regarding state and local education spending." (*Id.*)

Notably, Speaker Cutler appears to recognize these topics are not protected by the Speech and Debate Clause because he identified Mr. Donley and Mr. Miller as trial witnesses to testify in his defense on similar topics. According to Speaker Cutler, Mr. Donley's and Mr. Miller's "testimony will be to marshal for the Court some of the numerous legislation that has been implemented" and "publicly available data regarding state and local spending on the public school system." (Cutler's Memorandum of Law at 9-10.) Therefore, there appears to be no dispute that to the extent Mr. Donley's and Mr. Miller's testimony is limited to publicly available information, the Speech and Debate Clause would not apply.

## C. Waiver

That brings the Court to a related issue: waiver. To the extent the subject areas are protected, Petitioners argue, the privilege has been waived based upon Mr.

25

Miller's and Mr. Donley's testimony. Speaker Cutler and Chairman Saylor argue no such waiver occurred because waiver must be explicit. Chairman Saylor further argues Mr. Miller and Mr. Donley are employed by the Republican Caucus, not himself, and thus they could not waive his privilege.

The courts have recognized that the Speech and Debate Clause protects not only legislators, but also their staff. The United States Supreme Court has stated that "for the purpose of construing the privilege a Member and his aide are to be treated as one." *Gravel*, 408 U.S. at 616 (internal quotations omitted). In *Lincoln Party*, this Court also held that "the members, and their staff, of the General Assembly are protected from inquiries into those activities generally said or done in the performance of their official duties." 682 A.2d at 1333. Furthermore, some courts have recognized that the privilege extends not just to a specific legislator's personal staff but to aides working for a committee in a legislative capacity. *See Edwards v. Vesilind*, 790 S.E.2d 469, 482 (Va. 2016) ("An individual need not be a legislator's personal staffer to function within the ambit of the Speech or Debate Clause's protections."); *In re Perry*, 60 S.W.3d 857 (Tex. 2001) (legislative privilege applicable not only to aides acting on behalf of members of the legislature, but also aides working for a redistricting committee who were "acting in a legislative capacity."). Thus, if the privilege applies to legislators and staff working in a legislative capacity alike, it follows that the waiver of that privilege by one constitutes a waiver by the other.

Speaker Cutler and Chairman Saylor argue that waiver must be explicit and unequivocal, which is lacking here. In support thereof, they cite *Helstoski*. Petitioners respond that *Helstoski* is distinguishable because it involved the criminal prosecution of a congressman. Upon review, the Court agrees with Petitioners that

26

*Helstoski* is not applicable here. The United States Supreme Court, in *Helstoski*, "granted certiorari . . . to resolve important questions concerning the restrictions the [federal] Speech or Debate Clause[] places on the admissibility of evidence at a trial on charges that a former Member of the House had, while a Member, accepted money in return for promising to introduce and introducing private bills." 442 U.S. at 479. The Supreme Court ultimately concluded there was "no reason to decide whether an individual Member may waive the Speech or Debate Clause's protection against being **prosecuted** for a legislative act." *Id.* at 490 (emphasis added). Assuming it was possible, the Supreme Court stated "that waiver can be found only after explicit and unequivocal renunciation of the protection" and "[t]he ordinary rules for determining the appropriate standard of waiver do not apply in this setting." *Id.* at 491. Thus, it is apparent that the Supreme Court limited its holding applying a heightened standard for finding waiver to cases involving criminal prosecution. Because this case is in the civil context, not criminal, the Court is not persuaded that the heightened standard applies here.

The parties cite no authority from within the Commonwealth for the applicable standard of waiver of legislative privilege, and the Court could not find any. However, the United States District Court for the Eastern District of New York has held that legislative privilege may be waived "either in the course of litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Favors*, 285 F.R.D. at 212. In reaching this conclusion, the New York district court examined how courts in other jurisdictions have resolved the issue. *Id.* (listing various circuit and district court decisions holding same). It further explained that "courts have been loath to allow a legislator to invoke the privilege at the discovery stage, only to selectively

waive it thereafter in order to offer evidence to support the legislator's claims or defenses." *Id.* Thus, the New York district court held that "once the privilege is invoked, the [c]ourt should not later allow the proponent of the privilege to strategically waive it to the prejudice of other parties." *Id.*

This Court finds that reasoning persuasive. There is a fundamental unfairness to allowing a legislator, on the one hand, to invoke the Speech and Debate Clause as a shield to prevent his own deposition and, on the other hand, to utilize staff members as a sword by having them testify as to matters that would otherwise be protected and to which the legislator refused to testify. This was the reasoning of the Third Circuit Court of Appeals in *Powell*. Similar to this case, *Powell* involved a challenge to funding of public education, except on the grounds such funding was racially discriminatory. The action was originally brought against the executive branch; however, several legislative leaders subsequently sought and were granted permission to intervene in the action. The plaintiffs served discovery on the legislative leaders, who refused to respond on the basis of legislative privilege, prompting the plaintiffs to file a motion to compel, which the district court granted. On appeal, the Third Circuit stated the "[l]egislative [l]eaders conceded . . . the privilege they propose would enable them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cross-examined." 247 F.3d at 525. The Third Circuit concluded no such privilege exists and further explained that the legislative leaders were not "reluctant participants," but "voluntarily installed themselves" as "self-made defendants who seek to turn what has heretofore been the shield of legislative immunity into a sword."[11] *Id.* The court

---

[11] Speaker Cutler argues *Powell* is distinguishable on the basis that there, the legislators voluntarily intervened in the matter, whereas here, Petitioners named him as a respondent. The **(Footnote continued on next page…)**

28

concluded the appeal was interlocutory and thus, it lacked jurisdiction, but "note[d] that, as in any civil case, the [l]egislative [l]eaders remain protected by the [d]istrict [c]ourt's power to limit discovery which is unreasonably cumulative, more easily obtainable from another source, or unduly burdensome." *Id.* at 527.

As stated above, the Court finds that the general topics to which Mr. Miller or Mr. Donley already testified at deposition or are anticipated to testify at trial and to which Petitioners seek to depose Speaker Cutler and Chairman Saylor are not of the kind that would be protected by the Speech and Debate Clause. Thus, at this time, any assertion of waiver is premature.[12]

### D. Other Bases for Prohibiting a Deposition

Having concluded that the general topics identified by Petitioners are not protected by the Speech and Debate Clause, the Court must now examine whether Petitioners are entitled to depose Speaker Cutler and/or Chairman Saylor as to these nonprivileged topics or whether their depositions are protected by some other legal principle. As the Third Circuit explained in *Powell*, although the legislators' testimony was not privileged, the court "note[d] that, as in any civil case, the [l]egislative [l]eaders remain protected by the [d]istrict [c]ourt's power to limit discovery which is unreasonably cumulative, more easily obtainable from another source, or unduly burdensome." 247 F.3d at 527. *See also Hamilton*, 783 A.2d at

---

Court discerns no reason to allow a legislator who has been involuntarily brought into a matter to use legislative immunity as both a sword and a shield. As stated above, such a result would be fundamentally unfair to Petitioners.

[12] The Court cautions, however, that if Speaker Cutler attempts at trial to have Mr. Donley or Mr. Miller stray from the topics he identified into areas that normally would be protected by the Speech and Debate Clause, such as the motive or deliberations related to certain legislation, it will prohibit him from doing so.

855 (finding that although the Speech and Debate Clause did not apply, the subpoenas were overly broad).

As the Court stated in its decision disposing of Speaker Cutler's application to compel the depositions of Governor Wolf and Secretary Rivera and their respective applications to quash the notices of deposition, this type of general information "is readily obtainable from multiple sources, many of which are public and of which some the Court may take judicial notice." *William Penn Sch. Dist.*, slip op. at 13. Because the information was available through less intrusive means, we held Speaker Cutler did not establish a compelling need to depose Governor Wolf or Secretary Rivera about those items and granted a protective order related to same. *Id.* at 13, 17. Much of the information sought here is likewise obtainable from other sources. In fact, Petitioners acknowledge that they already obtained much of the same information from Mr. Miller and Mr. Donley. Therefore, further testimony on the same topics would be needlessly cumulative. *See* Pa.R.E. 403 (permitting a court to "exclude relevant evidence if its probative value is outweighed by a danger of . . . needlessly presenting cumulative evidence"). Nor is the general information sought within the proposed deponents' unique knowledge. Thus, it is likewise protected by what has become known as the high ranking government official exception.[13] *Vartan*, 733 A.2d at 1266. Thus, the Court will grant Chairman Saylor

---

[13] Petitioners argue that the exception should not be extended to Chairman Saylor because extending it to a committee chairperson would essentially eradicate the exception. The courts have extended the privilege to a variety of individuals, including coroners, mayors, district attorneys and their staff. *See Lindner v. Mollan*, 677 A.2d 1194, 1198 (Pa. 1996) (summarizing cases where exception has been applied), and *Feldman v. Hoffman*, 107 A.3d 821 (Pa. Cmwlth. 2014) (summarizing same). Whether the common law exception applies is determined on a case-by-case basis. *Lindner*, 677 A.2d at 1198. In *Montgomery v. City of Philadelphia*, the Supreme Court held that factors to be considered in determining whether the exception applies include the nature of the official's duties, the importance of his office, and whether the official is involved in policy making **(Footnote continued on next page…)**

30

a protective order against questions about general, publicly known information related to the school funding process, relevant budgets and appropriations, or public legislation or acts taken by the General Assembly.

Speaker Cutler, however, is in a significantly different posture than Chairman Saylor because of his party status. At oral argument, Petitioners argued that they should be able to depose Speaker Cutler as to the topics the legislative staff members testified at their respective depositions so Petitioners could use Speaker Cutler's testimony as a party admission, which they cannot do with the nonparty staff members' testimony. The Court is persuaded by this argument. Nevertheless, there are less intrusive means of obtaining this information than an oral deposition.[14] Rule 4014(a) of the Pennsylvania Rules of Civil Procedure provides, in pertinent part, that

> [a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rules 4003.1 through 4003.5 inclusive set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivery, mailing or receipt of any document described in the request.

---

functions. 140 A.2d 100, 105 (Pa. 1958). In that case, the Court found that the exception protected the deputy commissioner of public property, who was responsible, in part, for overseeing the performance of public contracts, and the city architect, who was responsible for overseeing the design and supervising the construction of new buildings. Here, Chairman Saylor is chairperson of the House Appropriations Committee. Petitioners admit he is "integrally involved in the annual education budget process." (Petitioners' Answer at 11.) Given this position, its importance, and the policy making involved, the Court finds the exception applies to Chairman Saylor.

[14] At oral argument, Petitioners acknowledged some of the information could be obtained through written discovery but it would not be a "substitute" for an oral deposition where they could follow up responses with additional questions based upon those answers. Following receipt of written responses, should Petitioners determine the need for additional discovery, Petitioners may file an application to that effect, at which time the Court will revisit its holding.

31

Pa.R.C.P. No. 4014(a). The Court is cognizant that fact discovery in this matter has closed. Therefore, the Court grants leave for Petitioners to serve requests for admission upon Speaker Cutler pursuant to Rule 4014 as to matters for which they seek party admissions. The requests shall be served within 30 days.

### E. **Public Statements**

Petitioners also seek to depose Speaker Cutler and Chairman Saylor about public statements they have made relating to the funding of public education in the Commonwealth. Ironically, Speaker Cutler seeks to prevent his deposition about such statements, although he sought to compel Governor Wolf and Secretary Rivera to sit for a deposition to testify about public statements they have made.

Because statements made outside of the legislative forum to constituents "is a political, not a legislative activity, it is not entitled to the protection of the Speech [and] Debate Clause." *Dickey*, 387 F.Supp. at 1335. However, as the Court did with Governor Wolf, *William Penn*, slip op. at 14, rather than requiring Speaker Cutler to sit for a deposition, the Court will allow Petitioners to serve written discovery requests upon Speaker Cutler related to any public statements he has made concerning the funding of public education in the Commonwealth.[15] Such written discovery shall be served within 30 days.

With respect to Chairman Saylor, based upon his statements, Petitioners argue they can depose Chairman Saylor about funding disparities between districts, the

---

[15] In *William Penn*, the Court similarly found that public statements made by Secretary Rivera were not privileged. However, because the Court was ordering Secretary Rivera to appear for a deposition to testify about his tenure as superintendent at one of the Petitioner School Districts, the Court held Speaker Cutler could inquire at this deposition as to public statements he made. *William Penn*, slip op. at 17-18. Alternatively, the Court held Speaker Cutler could serve written discovery requests upon Secretary Rivera related to his public statements in lieu of deposing him. *Id.* at 18.

cost of educating students to meet state standards, and whether the current levels of academic achievement meet the goals set by the Commonwealth. Chairman Saylor replies that two of the statements identified by Petitioners in their response to his Application were made on the floor of the House of Representatives or during an Appropriations Committee proceeding and, thus, they are protected by the Speech and Debate Clause. According to Chairman Saylor, the fact that the statements were republished in their original form on social media does not alter their original character. The Court agrees. The Speech and Debate Clause provides, in relevant part, that "for any speech or debate in either House [members of the General Assembly] shall not be questioned in any other place." Pa. Const., art. 2, § 15. Moreover, our Supreme Court has said that "[t]he Speech and Debate Clause prohibits inquiry into those things generally said or done in the House or Senate in the performance of official duties and into the motivation for those acts." *Pa. Sch. Bds. Ass'n,* 805 A.3d at 486. Thus, both the plain language of the Constitution and precedent supports a conclusion that a legislator "shall not be questioned in any other place" about statements made by that legislator on the House floor or during a legislative committee proceeding. Pa. Const., art. 2, § 15; *Pa. Sch. Bds. Ass'n*, 805 A.3d at 486. The Court is cognizant of the Supreme Court's concerns expressed in *League of Women Voters II*, but the statements at issue here, which were publicly made during a legislative session, are not of the same character as the private communications the legislative respondents in that case had with one another and others. Furthermore, although the statements were rebroadcast by Chairman Saylor on the internet or social media, absent some sort of evidence that the statements were materially altered or supplemented with additional commentary, the Court discerns no reason they would be stripped of the privilege. To hold otherwise would

undermine the purpose behind the Speech and Debate Clause, which is to "protect legislators from judicial interference with their legitimate legislative activities." *Consumers Educ. & Prot. Ass'n*, 368 A.2d at 680-81. Thus, Petitioners cannot inquire as to any statements made during official House proceedings, even via written discovery requests. However, to the extent Chairman Saylor made any other public statements that would not fall within the Speech and Debate Clause, the Court grants Petitioners leave to serve written discovery upon Chairman Saylor within 30 days.

## III. CONCLUSION

Based upon the foregoing, the Court concludes Speaker Cutler and Chairman Saylor have shown good cause for a protective order, Pa.R.C.P. No. 4012, and accordingly grant their respective applications in part. Neither Speaker Cutler nor Chairman Saylor shall be required to appear for an oral deposition by Petitioners at this time. However, Petitioners are permitted to serve written discovery requests upon Speaker Cutler and Chairman Saylor as set forth in the foregoing opinion.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Penn School District;                          :
Panther Valley School District;                        :
The School District of Lancaster;                      :
Greater Johnstown School District;                     :
Wilkes-Barre Area School District;                     :
Shenandoah Valley School District;                     :
Jamella and Bryant Miller, parents of                  :
K.M., a minor; Sheila Armstrong,                       :
parent of S.A., minor; Tyesha                          :
Strickland, parent of E.T., minor;                     :
Angel Martinez, parent of A.M.,                        :
minor; Barbara Nemeth, parent of                       :
C.M., minor; Tracey Hughes, parent                     :
of P.M.H., minor; Pennsylvania                         :
Association of Rural and Small Schools;                :
and The National Association for the                   :
Advancement of Colored                                 :
People-Pennsylvania State Conference,                  :
                              Petitioners               :
                                                       :
                      v.                               :     No. 587 M.D. 2014
                                                       :
Pennsylvania Department of Education;                  :
Joseph B. Scarnati III, in his official                :
capacity as President Pro-Tempore of                   :
the Pennsylvania Senate; Bryan Cutler,                 :
in his official capacity as the                        :
Speaker of the Pennsylvania House of                   :
Representatives; Tom W. Wolf,                           :
in his official capacity as the Governor               :
of the Commonwealth of Pennsylvania;                   :
Pennsylvania State Board of Education;                  :
and Pedro Rivera, in his official                      :
capacity as the Acting Secretary of                    :
Education,                                              :
                              Respondents               :

# **O R D E R**

**NOW**, August 26, 2020, upon consideration of the Applications for Protective Order filed by Respondent Bryan Cutler, Speaker of the Pennsylvania House of Representatives, and Chairman Stanley E. Saylor, a nonparty and Chairman of the Pennsylvania House of Representatives Appropriations Committee, and Petitioners' responses thereto, the Applications are **GRANTED IN PART**. Speaker Cutler and Chairman Saylor shall not be required to appear for an oral deposition by Petitioners. Although the discovery deadline has passed, the Court will permit Petitioners to serve written discovery requests upon Speaker Cutler and Chairman Saylor on the topics identified as permitted in the foregoing opinion. Such written discovery requests shall be served within 30 days.

_____
**RENÉE COHN JUBELIRER,** Judge